STEPHEN M. CHESTER, Respondent, *v.* FRANCOIS HENRY JUMEL et al., Appellants and Respondents.

Certain persons claiming to be entitled, as heirs of J., deceased, to his estate, whose claims were contested by other parties in possession, entered into an agreement with one DeC. to the effect that he should prosecute their claims at his own cost and expense, they agreeing to pay him a percentage specified on all sums recovered by him; he to have "a lien and a mortgage" for the amount on all the property of the estate to which he should establish the rights of the heirs. Actions were brought by DeC. which resulted in the acquisition by the heirs of an undivided interest in a large amount of real property. During the prosecution of these actions, DeC. assigned for good considerations, to various persons fractional parts of his interest. The title to the said real estate was, for the purpose of effecting a sale and distribution thereof, transferred to one E. in trust for the joint benefit of the heirs, DeC. and his assignees. In an action for an accounting by said trustee and a determination of the respective rights

of the beneficiaries, it appeared that by virtue of a decree in an action brought by some of the heirs against the other heirs, DeC. and his assignees, to compel a sale of the property and a distribution of the proceeds among the various claimants, a sale was made and a distribution of the proceeds in the manner prescribed was decreed. *Held*, that the questions as to the validity of the trust in E., the legality of the contract with DeC., the fact that it gave him a lien, that the lien was transferred by consent of all parties to the proceeds in the hands of the trustee, and that his assignees were in accordance with the priority of their respective assignments entitled to share in the proceeds were necessarily litigated and decided in that action.

Also, *held*, that the voluntary creation by the heirs of a trust in the property for the joint benefit of themselves and DeC. and in performance of their contract with him was an insuperable objection to any claim on their part that the contract was void or that it did not give him a present interest in the property; and that the distribution of the proceeds of the property was to be controlled by the terms of the trust.

Some of the transfers made by DeC., before the property was recovered, were questioned; each purported to give the assignees an interest in, or lien upon the property for the amount or proportionate share specified. *Held*, that as DeC. had, by virtue of his contract, acquired an equitable interest, whether the transfers were to be regarded as in form, assignments or mortgages, they operated as equitable assignments of so much of his interest; that the rights of DeC. whether vested or contingent, and whether the property was in existence or not were at all times alienable by him in whole or in part.

One of the parties holding under an assignment from DeC., claimed that she was entitled to a preference over prior assignments for the reason that her assignment was accepted by the trustee. *Held*, untenable; that the acceptance did not change the position of or add anything to the claim; that the claimants under DeC. took according to the priority of their assignments.

A trustee has no power, as such, to change or control the legal or equitable rights of the beneficiaries of the trust by his voluntary action.

One of the transfers executed by DeC. was contained in an agreement liquidating an indebtedness on his part and was to secure the amount found due. Interest was allowed by the judgment on the amount. This was reversed by the General Term, although there was no appeal from that portion of the judgment. *Held*, error.

Also, *held*, that conceding the question was presented on appeal, interest was properly allowed; that the contract amounted to an admission of an existing debt, and there being no time specified for payment it was payable immediately, and so, the assignee was entitled to interest as part of the debt, although the contract made no express provision therefor.

(Argued December 11, 1890; decided January 13, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 24, 1889, which modified and affirmed as modified a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Everett P. Wheeler* for Francois Henry Jumel and others, appellants. The rights of the defendants as between themselves cannot be adjudicated in this action. (*Smith* v. *Hilton*, 2 N. Y. Supp. 820; Pom. Eq. Juris. §§ 244, 245; *Bonton* v. *City of Brooklyn*, 15 Barb. 375; *Crevier* v. *Mayor, etc.*, 12 Abb. Pr. [N. S.] 340.) DeChambrun's interest, if any, was that of a lienor, not that of a tenant in common. (*Wahl* v. *Barnum*, 116 N. Y. 88, 89.) The contemporaneous and contiguous construction given to the Jumel agreement by the parties supports the position that DeChambrun was a mortgagee and not the owner of forty-seven and one-half undivided parts of the land. (*Wolsey* v. *Funke*, 121 N. Y. 87, 92.) The contract of April 20, 1876, provides, "They bind themselves to pay to him a sum of forty-seven and one-half per cent of all the gross sums which he shall recover for the Jumel heirs." That is, they agree to pay to him a certain sum of money which shall be equal to forty-seven per cent of all the gross sums which he shall recover for them. The gross sum which was received was the amount awarded to the heirs in the partition suit, which was $152,525.43. When that award was made DeChambrun had fulfilled his part of the contract, if he ever fulfilled it at all, the gross sum had been ascertained, and he was then entitled to be paid a sum equal to forty-seven and one-half per cent of that sum. The heirs had the right to pay it then, and thus end their obligation to him. (*O. N. Bank* v. *Olcott*, 46 N. Y. 17; Bouvier's Law Dict. tit. Lien; Overton on Liens, § 1; *Peck* v. *Jenness*, 7 How. [U. S.] 612, 620; Pom. Eq. Juris. § 1238.) DeChambrun had no interest in the profits. (1 R. S. 728, § 55; 4 Kent's Comm. 438; Story's Eq. Juris. 1261;

*Fulton* v. *Whitney*, 66 N. Y. 548; *Bennett* v. *Austin*, 81 id. 308; *Conger* v. *King*, 11 Barb. 356; *Davis* v. *Austin*, 1 Ves. 247; *Schaffer* v. *Reilly*, 50 N. Y. 61; *Cutts* v. *Guild*, 57 id. 229; *Ingraham* v. *Disborough*, 47 id. 421; *Crane* v. *Turner*, 67 id. 437.) The rights of those who claim under DeChambrun depend upon the contract of April 20, 1876, between the Jumels and DeChambrun. If that contract is invalid, or DeChambrun has not complied with its conditions, his assignees cannot recover. (*Coughlin* v. *N. Y. & H. R. R. Co.*, 71 N. Y. 443, 449, 450; Code Civ. Pro. §§ 56, 1910; Penal Code, § 130; 1 R. S. 739, § 147; *Kling* v. *Ingraham*, 66 Barb. 250, 259; 2 Bouvier's Law Dict. 427; *Tappan* v. *Almy*, 13 Allen, 301; *Brown* v. *Weber*, 38 N. Y. 187, 189.) The parties who claim liens acquired no liens under DeChambrun. (*Dusenbury* v. *Fisher*, 15 J. & S. 482; Code Civ. Pro. § 73.)

*Herbert B. Titus* for Jumel appellants. The court had no power to render the judgment entered herein, or any judgment in respect to the real estate that had been sold by Elliott, trustee, or its proceeds. (Code Civ. Pro. § 1221; 2 R. S. 1851; *Clark* v. *Bell*, 4 Dana, 15; *Smith* v. *Trimble*, 27 Ill. 152; *Codwise* v. *Taylor*, 4 Sneed. 347; 1 Seton on Decrees, 20; Damilli's Ch. Pr. 1001; *Taylor* v. *Bond*, 1 Bush. 17; *McCall* v. *McCall*, 1 Tenn. Ch. 500; *Romeyn* v. *Sickles*, 100 N. Y. 650.) The court had no power to render any judgment in respect to the real estate that had been sold, or its proceeds. (*Gardner* v. *Ogden*, 22 N. Y. 329.) Appellants are not the heirs of Stephen Jumel, and nothing has been recovered for them. Plaintiff, therefore, cannot recover in this action. (*Bailey* v. *Bailey*, 25 Mich. 108; *McKinney* v. *Stewart*, 5 Kan. 392; *Strobecker* v. *Bank*, 6 Penn. St. 45; *Hoover* v. *Clark*, 3 Murphey, 173; *Norton* v. *Winter*, 1 Oregon, 481; *Van Horne* v. *Petrie*, 2 Caines, 213; *Lepham* v. *Almy*, 13 Allen, 301; *Jones* v. *Walker*, 2 Paine, 719; *Wright* v. *Ellison*, 1 Wall. 16.) The judgment should be reversed. (*Williams* v. *Ingersoll*, 89 N. Y. 518.)

*John J. Macklin* for Jean Albert Tauziede, impleaded, etc., appellant. This action, is. in fact, an action between attorney and client, and upon a contract providing for contingent compensation. Such a contract must be strictly construed against the attorney and in favor of the client. (*Brown* v. *Mayor, etc.,* 9 Hun, 587–595 ; *Hitchings* v. *Van Brunt,* 38 N. Y. 335 ; *Whittaker* v. *N. Y. & H.·R. R. Co.,* 18 Abb. [N. C.] 11.) This clause may be construed as providing for a sale of so much of the inheritable rights of the Jumels not subject to any rights of DeChambrun under the third paragraph. (Comyn on Cont. 29.) The view of the General Term that ·there was a severance or division of the interests of the Jumels into shares is erroneous. (*Ward* v. *Whitney,* 8 N. Y. 442, 446.) The construction adopted by the General Term is directly repugnant to the language of the third, fourth, sixth and seventh paragraphs of the contract, and to the provisions of the several powers of attorney. (*In re Grapel,* 112 N. Y. 419, 425.) The claim that the contract operated as an equitable assignment of a share to DeChambrun is erroneous. (Story's Eq. Juris. §§ 1040, 1049 ; *Brittle* v. *Tuttle,* 81 N. Y. 457 ; *Hoyt* v. *Story,* 3 Barb. 362 ; *Fairbanks* v. *Sargent,* 117 N. Y. 324, 330 ; *Frost* v. *Child,* 21 Wall. 441, 447 ; *Stanton* v. *Embury,* 93 U. S. 548 ; *Williams* v. *Ingersoll,* 89 N. Y. 508, 519 ; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 id. 443.) The contract expressly excludes any intention on the part of the Jumels to constitute DeChambrun an equitable assignee or a tenant in common, or joint tenant with them in the claims which he was authorized to prosecute. (*Coughlin* v. *R. R. Co.,* 71 N. Y. 443 ; *Grapel* v. *Hodges,* 112 id. 419.) The contract was not based upon a valid consideration. It is such a one that courts of equity refuse to enforce. (*Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 N. Y. 443 ; Story's Eq. Juris. § 1049 ; 2 Pars. on Cont. 766 ; Chitty on Cont. 524, 525, 766 ; Penal Code, §§ 129, 130.) The measure of damage to which DeChambrun and his assignees are entitled is forty-seven and one-half per cent of the value of the property at the time of the recovery

and conveyance to Elliot in 1883. (*Fairbanks* v. *Sargent,* 117
N. Y. 353; *Kortright* v. *Cady,* 21 id. 343.) The true princi-
ple applicable to the construction of the contract is, when did
the cause of action thereunder accrue, or when did the liability
of the Jumels to pay the forty-seven and one-half per cent
arise? (*Miller* v. *Cassady,* 25 Ia. 327; *Mygatt* v. *Wilcox,* 45
N. Y. 306; *Baker* v. *Drake,* 53 id. 350.) If, when the com-
plainants had completed the contract on their part, the pay-
ment to them by the Jumel heirs of forty-seven and a half
per cent of the gross sum recovered or of the then value of
the property, if property is deemed to have been recovered,
would have been a satisfaction of the claims and performance
of the contract on their part, they not having performed the
contract, then, what would have been held then to be perform-
ance is the measure of the recovery now, with interest from
the time when they should have performed. (*Youngs* v. *Wil-
son,* 27 N. Y. 351.) It may be argued that in case the prop-
erty had depreciated in value, that the claimants would have
suffered; that as they, in such an event, would have sustained
a loss, that they are entitled to a share in the profits. This is
not tenable. (*Fairbanks* v. *Sargent,* 117 N. Y. 328; *In re
Hynes,* 51 Hun, 340; 113 N. Y. 656.)

*David Thornton* for Frances A. Gesner, appellant. When
an attorney has several actions and recovers judgment in but
one of them, he cannot, in the absence of a special agreement,
have a lien upon that judgment for his compensation in all the
actions. (*Williams* v. *Ingersoll,* 89 N. Y. 517.) The agree-
ments made with Stoutenburgh, Chatfield and Schermerhorn
are not equitable assignments. (*Allyn* v. *Thurston,* 53 N. Y.
622; *Estes* v. *Wilcox,* 67 id. 264; *O. N. Bank* v. *Olcott,* 46
id. 12; *Scheyer* v. *Mayor, etc.,* 4 J. & S. 255; *E. Bank* v. *F.
N. Bank,* 46 N. Y. 82; *R. L. & M. Works* v. *Kelly,* 88 id.
234; 31 Alb. L. J. 601.) An agreement, either by parol or in
writing, to pay a debt out of a designated fund, does not give
an equitable lien upon the fund or operate as an equitable
assignment thereof. (*Williams* v. *Ingersoll,* 89 N. Y. 508;

*Fairbanks* v. *Surgent,* 117 id. 330.) Courts of equity will enforce the security of judgment-creditor against the equitable interest in the freehold estate of his debtor, treating the judgment as in the nature of a lien upon such equitable interest. In cases of this sort the judgment-creditor must have pursued the same steps as he would have been obliged to do to perfect his lien if the estate had been legal. (Story's Eq. Juris. § 1216.)

*Albert Stickney* and *R. Duncan Harris* for executors of defendant Elliott, appellant. There being no evidence whatever to sustain the finding as made, the exception to a refusal to find makes such refusal, under the circumstances in this case, an error of law, and made it incumbent on the respondent to insert in the case any evidence bearing on that exception. It is not necessary for us to have the case show affirmatively that the record contains " all the evidence." (*Halpin* v. *P. Ins. Co.,* 118 N. Y. 172; *Brayton* v. *Sherman,* 119 id. 623; *Aldridge* v. *Aldridge,* 120 id. 616; *Bedlow* v. *N. Y. F. D. D. Co.,* 112 id. 369; Code Civ. Pro. § 993.) The agreement between DeChambrun and Elliott, accompanied by the deposit of the contract with their heirs, operated as an assignment at law of DeChambrun's interest under his contract with the heirs for the purpose of securing the payment of the percentage according to the terms of the agreement between DeChambrun and Elliott. (*Greene* v. *R. F. Ins. Co.,* 84 N. Y. 572.) This assignment to Elliott, accompanied with all the muniments of title, for valuable consideration, without notice of the agreements with other parties, with the subsequent rendition of their services by Elliott and Harris, combine the legal title with equities at least equal to those of the other claimants, and, therefore, give the superior lien to Elliott and Harris. (*Judson* v. *Corcoran,* 17 How. [U. S.] 612; *Spain* v. *Hamilton,* 1 Wall. 604; *Parks* v. *Innes,* 33 Barb. 37.) The omission of the above claimants to require possession of the contract with the heirs and its possession by DeChambrun, thereafter transferred to Elliott, bring Elliott's claim within the following lines of authority: (*Moore* v. *M. Bank,* 55 N. Y. 41;

*McNeil* v. *T. N. Bank*, 46 id. 325 ; *Fairbanks* v. *Sargent*, 104 id. 117.)

*Louis Marshall* for George J. Schermerhorn, appellant. By the contract of August 28, 1880, between Schermerhorn and DeChambrun, the former became entitled to immediately receive from the latter the sum of $30,000 agreed to be paid, and the lien created upon the property pledged by DeChambrun as security for the indebtedness evidenced by the contract, protected interest and principal alike. (Code Civ. Pro. § 66 ; *Williams* v. *Ingersoll*, 89 N. Y. 222 ; *Purdy* v. *Phillips*, 11 id. 406 ; *Farquhar* v. *Morris*, 7 T. R. 120 ; *Sheehy* v. *Mandeville*, 7 Cranch. 208 ; *Francis* v. *Castleman*, 4 Bibb. 282, 283 ; 1 Sutherland on Dam. 581 ; *Robinson* v. *Bland*, 2 Burr. 1077 ; *Biddam* v. *Riley*, 2 Bro. C. C. 2 ; 2 Sedg. on Dam. [7th ed.] 174 ; *Dodge* v. *Perkins*, 9 Pick. 369 ; *Foote* v. *Blanchard*, 6 Allen, 221 ; *Sumner* v. *Beebe*, 37 Vt. 565 ; *Williams* v. *Sherman*, 7 Wend. 109 ; *Van Rensselaer* v. *Jewett*, 2 N. Y. 135 ; *Kent's Admr.* v. *Kent*, 28 Gratt. 840 ; *Ruckman* v. *Bergholz*, 38 N. J. L. 531 ; *Little* v. *Banks*, 85 N. Y. 258 ; *Winch* v. *M. B. I. Co.*, 36 id. 618 ; *Dana* v. *Fiedler*, 12 id. 40, 50 ; *Moner* v. *Kip*, 6 Paige, 91 ; *Long* v. *Long*, 16 N. J. Eq. 59 ; *Brainerd* v. *Jones*, 18 N. Y. 35 ; *Carey* v. *Doyne*, 5 Ir. Ch. 104 ; *In re Kerr*, L. R. [8 Eq. Cas.] 331 ; 1 Sutherland on Dam. 675 ; *Jacott* v. *Emmett*, 11 Paige, 142 ; *Johnson* v. *Brennan*, 5 Johns. 268 ; *S. C. R. Co.* v. *Moravia*, 61 Barb. 180.) There is no merit in the objection that Schermerhorn, in his answer, claimed interest from 1884 only. This being a suit in equity, the issues between the parties arising upon the construction and interpretation of a written instrument, the variance between the pleadings and the proof in no manner affected the trial so as to mislead or prejudice any of the parties and was cured by the judgment in favor of Schermerhorn. (*Schultz* v. *T. A. R. R. Co.*, 89 N. Y. 247 ; *Pratt* v. *H. R. R. R. Co.*, 21 id. 237.)

*Douglass Campbell* and *George C. Lay* for Chester, Smith, Campbell, Schermerhorn, LeBourgeois, Griswold and Connor,

respondents on appeal of Jumel heirs. There being no certificate that the case contains all the evidence, the findings of fact are incontestable. (*Porter* v. *Smith,* 107 N. Y. 531; 35 Hun, 118.) The contract of April 20, 1876, between DeChambrun and the Jumel heirs is a valid subsisting agreement, giving a lien or mortgage for forty-seven and one-half per cent on all the property recovered, which lien followed the property conveyed to the defendant Elliott. (*Sedgwick* v. *Stanton,* 14 N. Y. 289; *Voorhees* v. *Door,* 51 Barb. 580; *Fowler* v. *Smith,* 102 N. Y. 395.) The second contract between DeChambrun and Schermerhorn is binding on DeChambrun. (*Stone* v. *Wood,* 7 Cow. 45.) The defendant Campbell is entitled to the amount due under the Chatfield contract. ( *Ward* v. *Craig,* 87 N. Y. 550; *In re Knapp,* 85 id. 284.)

*Douglass Campbell* and *George C. Lay* for respondents Chester, Griswold and Connor on Elliott appeal. There being no certificate that the case contains all the evidence, the findings of fact are incontestable. (*Porter* v. *Smith,* 107 N. Y. 531; 35 Hun, 118.)

*Douglass Campbell* and *George C. Lay* for same respondents on Gesner appeal. The assignment to the defendant Gesner, and its acceptance by Elliott, gave her claim no preference over the claims, prior in time, the validity of which has been upheld by the court below. (*Fairbanks* v. *Sargent,* 104 N. Y. 108; *Greene* v. *Warwick,* 64 id. 220.)

*Edward Winslow Paige* for respondents except Gesner and Griswold. DeChambrun's contract was valid. (*Fowler* v. *Cahan,* 102 N. Y. 397; *Mosley* v. *Mosley,* 15 id. 335, 336; *Fairbanks* v. *Sargent,* 104 N. Y. 108; *Field* v. *Mayor, etc.,* 6 id. 179; *Jones* v. *Mayer,* 90 id. 387, 390; *Risley* v. *P. Bank,* 83 id. 318, 329.) Gesner's contract is not entitled to preference. (*Fairbanks* v. *Sargent,* 104 N. Y. 108.)

RUGER, Ch. J. We agree with the General Term in the conclusions reached by them, except in regard to the subject

of interest on the Schermerhorn claim. The action was brought by the plaintiff, claiming, as one of the beneficiaries in a trust estate held by one John Elliot, to obtain an accounting by said trustee in regard to the trust, a determination of the respective rights of the several parties claiming an interest in such trust fund, and the payment to him of such share in said estate as he might show himself entitled to.

The trust fund consisted of property recovered by the heirs of one Stephen Jumel from various parties, either by suit or compromise, who had, upon the death of Jumel in 1832 and subsequently, taken possession of such· property, and claimed to hold the same as the owners thereof. The title of such property being so in dispute, the heirs of Jumel residing in France, in 1876, entered into a contract with one DeChambrun to prosecute their claims to such property and recover possession thereof, and whereby, among other things, they bound themselves " to pay to him a sum of forty-seven and a half per cent of all the gross sums which he shall recover for the Jumel heirs, they henceforth give the said DeChambrun a lien and a mortgage to the amount of the sum of forty-seven and a half per cent on all the property on which the said DeChambrun shall establish the rights of the Jumel heirs. This share is attributed to him voluntarily and freely as much for his having made known to them the existence of that estate, as for fees, and also to repay him for advances, disbursements and whatever expenses he may have made, and shall make, to bring about the recovery of the sum hereabove· mentioned of fifty-two and a half per cent, paid to the Jumel heirs, so paid out of all sums recovered before taking any sum whatever for expenses, fees and disbursements." It was· also provided that the action should be prosecuted at the sole cost and expense of DeChambrun, and that he should have no authority to incur any expense on behalf of said heirs. Powers of attorney were at the same time executed by the heirs of Jumel to DeChambrun, authorizing him to prosecute all necessary actions and to take all necessary proceedings to enforce the rights of said heirs in such property and to recover possession

thereof, and he was also authorized to negotiate a sale at a minimum sum of the interest of the Jumel heirs, amounting to fifty-two and one-half per cent in the property recovered, and in case he made such sale to transmit the proceeds thereof to said heirs. Under this power of attorney, certain actions, in the appropriate courts, to recover real estate from the several persons having possession of the same, were brought, or caused to be brought, by DeChambrun from time to time, which resulted in the acquisition by such heirs of an undivided interest in a large amount of real property. Prior to the commencement of these actions and also during their pendency, DeChambrun, in consideration of pecuniary and professional aid and assistance extended to him by various persons, from time to time, aliened and assigned to such persons fractional parts of the interest in the anticipated recoveries.

It is not seriously contended by anyone but that DeChambrun rendered the services which entitled him to the compensation provided by the contract. By virtue of certain other powers of attorney, subsequently given by said heirs to DeChambrun and to John Elliott, the title to said real estate so recovered was, for the purpose of effecting a sale thereof and a distribution of its proceeds, by nominal sales, purchases and otherwise, vested in John Elliott in trust for the joint benefit of the Jumels, DeChambrun and his several assignees.

Various appeals have been taken by different parties from the order of the General Term disposing of the case in that court, but we do not think it necessary to travel over the ground so well covered by that court in its opinions, but shall confine ourselves to a brief reference to some additional considerations bearing upon the questions raised in this court, and to a discussion of the single point in which we differ from the conclusions reached by the General Term. By virtue of a decree in an action in the Supreme Court, instituted by the Tauziedes (a part of the Jumel heirs) against the other heirs and all other parties to this action, including DeChambrun and his several assignees, for the purpose of compelling a sale of said Jumel property and the distribution of its proceeds

among the various claimants thereto, the said property was, in the year 1888, sold and converted into money and available securities, and its distribution according to the mode prescribed by the original judgment rendered on the report of the referee *in this action* was thereby confirmed and decreed.

The questions as to the validity of the trust created for the benefit of the Jumel heirs and DeChambrun, and the legality of DeChambrun's contract; the fact that it gave him a lien upon and interest in the property recovered for the Jumels to the extent of forty-seven and a half per cent thereof; that such lien was transferred upon the sale of such property by the consent of all parties to the proceeds thereof in the hands of the trustee, and that the assignees of DeChambrun, as described in the original judgment in this action were, in accordance with the priority of their respective assignments, entitled to share in such proceeds in the proportions named in such judgment, would seem to have been necessarily litigated and decided in that action. There would seem to have been no absolute necessity for the prosecution of both the Tanziede and the present action at the same time, as their objects were substantially the same; but, inasmuch as the courts below have entertained jurisdiction of both actions and have proceeded to judgment therein, we have no alternative but to give effect to their determinations so far as they have been legally declared and have come before us for consideration and review on this appeal.

The voluntary creation by the Jumel heirs of a trust in the property recovered by DeChambrun from the adverse claimants thereto, for the joint benefit of themselves and DeChambrun, in voluntary performance of the obligations of the DeChambrun contract would seem to present an insuperable objection to any claim now made that such contract was, for any reason, void, or did not give DeChambrun a present interest in the property thus recovered and held in trust. This trust was created by the express authority of the Jumel heirs after the property had been recovered by them from its former occupants, and if DeChambrun then had no interest in the

property under his contract, no reason is apparent why he was made a joint beneficiary of the trust with the Jumels. The fact that the extent of DeChambrun's interest in the property was not particularly specified in the trust conveyances, shows that no liquidation of his share had then been effected and was considered to be forty-seven and a half parts thereof, the only amount which had theretofore been considered or agreed upon. At all events, the present situation of the property to be administered and distributed in this action is an existing fund created for the express benefit of the Jumels, DeChambrun and his lawful assignees, and its distribution is to be controlled by the terms of the trust as manifested in its creation. The object and intention of the trust and the respective interests of the various claimants in such fund, have been found by the referee, and his findings have been approved by the General Term. These findings having been based upon sufficient evidence to sustain them, must now be considered as conclusively established.by the judgment of the court below.

Some question has been made, under the DeChambrun contract, by the Jumel heirs' as to the amount of the fund in which DeChambrun was entitled to share, or upon what sum his percentage should be computed ; whether upon the nominal sum bid for the property in 1882, or upon its actual value as determined by the sale in 1888. It does not impress us as at all material whether such percentage is computed upon one amount or the other. In either event the forty-seven and a half per cent, concededly due to DeChambrun, must result in the same aggregate sum. It is not claimed that any division of the respective interests of the Jumels and DeChambrun was made in 1882, or but that by the consent of all parties the property was thereafter kept unsold and intact until it was vested in the trust of 1884. If DeChambrun was entitled to forty-seven and a half parts of the property in 1882, that interest continued to remain his share so long as the property was held undivided in trust for the joint benefit of the several parties interested in the trust fund, and when the real value was actually determined by a sale, his interest in the fund still

remained forty-seven and one-half per cent thereof. If it be insisted that the nominal sale in 1882 for $152,000 amounted. to a *bona fide* liquidation of the sums due DeChambrun under his contract, and entitled him to forty-seven and a half parts of that sum only, it would still follow that his interest was practically used, either with or without his consent, by the Jumels in buying and carrying the real estate which was afterwards vested in trust in Elliott, and DeChambrun and his assignees were entitled upon well-settled principles to share in any increase in value of the property purchased, in proportion to the respective interests which they had contributed to effect such purchase. But we are entirely satisfied that the sales and transactions taking place on the division of the property between the Chases and Jumels in 1882, were not in any way intended to fix a value upon the property for the purpose of estimating the interest of DeChambrun therein, but were amounts arbitrarily but mutually agreed upon to effect an equitable separation of the interests of the Jumels and Chases in the property which had theretofore been held by them as tenants in common. This is quite apparent from the fact that the trust was created in the form which was given to it by the Jumels after such separation, and through the acquiescence of all parties in the retention of the property until a favorable opportunity arrived for its conversion into money, and its distribution among the beneficiaries of the trust.

For these reasons, as well as those expressed in its opinion by the General Term, we are of the opinion that no error was committed by the court below in affirming the judgment as against the Jumel heirs.

The other questions in the case relate to the respective rights of the several claimants to the fund under alleged assignments from DeChambrun, in which the Jumels have no interest * * *

---

*The omitted portion of the opinion relates to a claim made to a portion of DeChambrun's interest as to which the court held after a discussion of the evidence, that it was sufficient to sustain the finding below rejecting the claim.

Gesner, one of the claimants to a share in the DeChambrun portion of the fund, also appeals from the judgment, upon the alleged ground that she is entitled to a preference in the distribution of the fund over other claimants thereto. The assignments thus sought to be displaced were prior, in point of time, to her's; but are attempted to be deferred upon the alleged ground that they are not in fact assignments, but personal contracts of DeChambrun with the respective claimants, and conferred no interest in the fund upon the several transferees thereof. Gesner's assignment is practically the latest in date, and if she fails to defeat some of the prior assignments, she fears the fund will be insufficient to pay all of the claims upon it, and she may not be able to collect her whole claim. How this may be, we know not, and if we did, it could have no bearing upon the legal aspect of the question. That is to be determined by a consideration of the several agreements between DeChambrun and his various assignees and their nature and effect, and, in the absence of any other controlling equity, by the order of priority in which the several transfers were made. These transfers were all made at a time when DeChambrun's right rested in contract alone. That was then a contingent interest in real property belonging to the Jumel heirs, which was yet to be recovered for them from adverse claimants by the aid of DeChambrun.

As this property was recovered from time to time, this right ripened into an equitable lien thereon and was fully recognized and protected by the trust thereafter created in such property. The voluntary performance by the Jumels of their contract with DeChambrun having been accomplished by the conveyance of the property recovered, in trust for the joint benefit of DeChambrun and themselves, with his consent, effectually bars any claim that the interest of DeChambrun in the trust property was invalid by reason of any infirmity in the original contract, or that he had not the power to transfer his interest, or any part thereof, in such fund to others as he might, from time to time, find it necessary or profitable to do. That the rights of DeChambrun in this property, whether vested or

contingent, and whether the property was in existence or not, were at all times alienable by him in whole or in part, at his will and pleasure, is too well settled by authority to admit of controversy. (*Field* v. *Mayor, etc.,* 6 N. Y. 179 ; *Fairbanks* v. *Sargent,* 104 N. Y. 108 ; *Riely* v. *Phenix Bank,* 83 id. 318 ; *Jones* v. *Mayor, etc.,* 90 id. 387.)

On this branch of the case it only remains to be seen whether any of the transfers preceding Gesner's in date, which have been sustained by the court below, were in form sufficient to create an interest in his share of the property or not. These transfers, although varying somewhat in phraseology, are in force and effect substantially the same, and each purports to give to their respective assignees an interest in or lien upon the property recovered for specified amounts, or a proportionable share thereof. They were executed in the individual name of DeChambrun, and although he was described in some of them as the agent of the Jumels, they were, notwithstanding that fact, the individual contracts of DeChambrun, and bound his interest alone, as he had no power to bind any other. These contracts plainly attempted to confer an interest upon their several assignees in property belonging to the Jumels, by virtue of authority given to DeChambrun by them to do so to the extent of his interest in it. DeChambrun had, by virtue of his contract, acquired an equitable interest in such property, and it was this interest that he attempted to dispose of and no other, so that whether these contracts are regarded as being in form assignments or mortgages, the question is as to the intent of the parties in making them, and if it is clearly inferable from their terms that they were intended to convey an interest in the property, they will operate as equitable assignments of the specified fund to the extent of DeChambrun's interest therein, in favor of their respective assignees. (*Fairbanks* v. *Sargent, supra; Jones* v. *Mayor, etc., supra.*) That such was their object and purpose we entertain no doubt. It is also claimed by Gesner, that because her assignment was accepted by the trustee she acquired a preference over those whose assignments were not so accepted. This

claim we also think is untenable. A trustee has no power as such to change or control the legal or equitable rights of the beneficiaries of a trust by his voluntary action, and his acceptance added nothing to the claim thus accepted. The various claimants under DeChambrun took an equitable interest in his share according to the priority of their assignments, and the trustee had no power, as trustee, to defeat, defer or prefer any interests lawfully created by DeChambrun in the fund.

For the reasons stated, as well as those given in the opinion of the court at General Term, we think there is no reason, upon the appeal of either of the Jumel heirs, Elliott or Gesner, for disturbing the order of affirmance.

We are, however, of the opinion that that court erred in reversing the allowance of interest made by the referee to the defendant Schermerhorn on the sum of $30,000.

No one having an interest in this question, or a right to raise it, has appeared in this court to sustain this reversal. On Gesner's appeal from the original judgment she did not appeal from that part allowing interest to Schermerhorn, but confined her appeal to so much of the judgment as held that she was not entitled to a preference over the other claimants to the fund. Neither did Gesner take any exception to the findings of the referee allowing interest to Schermerhorn. That part of the judgment could not, therefore, have been reversed on her appeal; but, notwithstanding this fact, she now attempts to take up the decision procured by the Jumels and DeChambrun on that question, and use it here for the purpose of defeating a claim which, so far as this action is concerned, has been finally adjudicated against her by the referee. This she is not authorized by the rules of practice to do. But, supposing the question is fairly raised on this appeal, we are of the opinion that interest was properly allowed to Schermerhorn. The agreement of transfer in plain language imported a liquidation of an existing debt from DeChambrun to Schermerhorn at the sum of $30,000, and the creation of a lien on the fund as a security for such debt. The giving of the security did not postpone the time for the payment of the acknowl-

·edged debt, or shield DeChambrun from prosecution for its immediate collection, if the creditor elected to pursue that course. The contract operated as an admission of an existing debt for a good consideration, and the law implies a promise to pay it. There being no time specified for its payment, the law makes it payable immediately, and gives interest for delay in discharging the obligation after it becomes due. (*Purdy* v. *Philips*, 11 N. Y. 406.)

It cannot be disputed but that DeChambrun was liable to prosecution for the debt at any time after the liquidation of the amount, or but that interest was recoverable from him in such an action as damages for not satisfying the debt when it ought to have been paid. How then can it be claimed that Schermerhorn is not entitled to interest when seeking to enforce payment against the property of his debtor pledged as security for such indebtedness. DeChambrun was by force of his contract liable to pay interest, and it was this debt he attempted to secure. The debt was the sum liquidated with the necessary incidents attached to its non-payment. The debt by operation of law necessarily grew in amount as the duty of paying it was delayed, and cannot be legally satisfied except by the payment of the sum due upon it when it is attempted to be discharged. (*People* v. *County of New York*, 5 Cow. 334; *Dana* v. *Fiedler*, 12 N. Y. 40.)

We do not think, and indeed it is not claimed by anyone, that the debt was exclusively made payable from a particular fund, or that the creditor was confined to a particular fund for its enforcement. The contract unqualifiedly admits an existing indebtedness and refers to a fund only as security for its payment. The fact that the contract does not specially provide for the payment of interest, does not affect the legal rights of the parties, for the law supplies the omission of the contract, if any there be, and makes the interest an integral part of the debt.

The court below have sought to make a distinction between the amount of the debt admitted to be due and the amount for which security is given. The language of the contract, in

referring to the two sums, is precisely the same, and we cannot suppose the debtor referred to one sum when he fixed the amount of his liability, and to another when he provided security for its payment.   To hold this would be to infer that the creditor intended to accept satisfaction of the principal sum and abandon his interest, provided it was paid from the property pledged.   Such an inference is not permissible.   We think this question is settled by authority.

In *Carey* v. *Doyne* (5 Irish Ch. Rep. 104), it was held that interest was collectable out of the proceeds of property pledged for the payment of the specific sum of £830, although the property was not sold until ten years after the pledge was made.   The agreement under which this was held was contained in a letter from the debtor to one Curtiss reading as follows:

"DEAR SIR — I beg to direct you to retain the title deeds of Derryfore for Mrs. Carey until the £830 is paid out of the proceeds of the sale of that property, and request you will have the goodness to hurry Mr. Elliott in concluding the business.

" Yours truly,

"B. DOYNE."

We can see no difference in principle between that case and the one under consideration.

In the case of *In re Kerr's Policy* (L. R. [8 Eq. Cas.] 331), the debtor had deposited with his creditor a policy of life insurance to secure the repayment of the sum of £300 without any stipulation as to time of payment or interest.   Vice-Chancellor JONES, in discussing the case, says: "If this case had had to be determined for the first time, I should have decided it exactly as the case of *Carey* v. *Doyne* was decided by the Master of the Rolls in Ireland.   I think that a deposit of title deeds to secure a loan is to be considered as an agreement to execute a mortgage of the property comprised in the deeds with interest."

In *Farquhar* v. *Morris* (7 T. R. 124), where the action was on a bond in the penal sum of £800, conditioned to pay £400,

in which no day of payment was specified or reservation of interest made, it was held that the bond was payable on a day certain, and hence drew interest from that time ; the court saying, " it is payable on the day of the date, no 'other time being mentioned for payment," and that "interest is payable from the time of payment, namely, from the date, though not expressly reserved."

For the reasons stated, the order of the General Term should be reversed, and that entered on the report of the referee affirmed with costs in this court (to the several respondents appearing therein) against the appellants, the Jumel heirs, Elliott and Gesner, and to the appellant Schermerhorn against the Jumel heirs and DeChambrun.

All concur.

Order reversed.