### DE CHAMBRUN v. CAMPBELL et al.

(Circuit Court, N. D. New York. February 16, 1893.)

#### No. 5,924.

JUDGMENT—RES JUDICATA.

> Where, in a suit in a federal court against a trustee for a discovery and accounting, it appears that the precise questions were presented and adjudicated in prior litigation in the state courts, between the same parties, as to the same subject-matters, and there is no evidence of fraud in procuring the adjudications, the doctrine of res judicata applies, and complainant will be denied relief.

In Equity. Bill by Charles A. de Chambrun against Douglas Campbell and Frances A. Gesner for a discovery and accounting. Upon complainant's death, Pierre de Chambrun, his administrator, was substituted. Bill dismissed.

Everett P. Wheeler and Wyllys Hodges, for complainant.
Louis Marshall, for defendant Campbell.
David Thornton, for defendant Gesner.

COXE, District Judge. This action was originally brought by Charles A. de Chambrun against the defendant Campbell, as trustee, alleging negligence, fraud and breach of trust, by which certain moneys and securities belonging to the complainant were diverted and lost. The judgment demanded is that the rights of the defendant Gesner in the trust be adjudged and determined, that thereafter a final accounting be had between the complainant and Campbell, and that the latter shall be adjudged to pay over to the complainant all moneys and securities found due on such accounting. Charles A. de Chambrun died September 13, 1891, and his son Pierre, as administrator, revived the action. The leading facts, out of which this controversy arises, so far as it is necessary to refer to them for the purposes of the present decision, are as follows:

On the 20th of April, 1876, Charles A. de Chambrun entered

into a contract with the French heirs of Stephen Jumel by which they appointed him their special attorney to take all necessary steps to recover property belonging to them in the city of New York. They bound themselves to pay to him 47½ per cent. of all the gross sums recovered by him, for which amount he was given a lien and mortgage on all the property to which their right should be established. Very soon after the execution of this instrument De Chambrun commenced transferring to lawyers and others, whose assistance he considered necessary in his effort to recover the property, various interests in the said 47½ per cent. to secure them, respectively, for money advanced and services rendered or to be rendered. In some instances these agreements provided for a transfer of a percentage of De Chambrun's interest, in others a definite sum was named. To secure these interests a specific lien or mortgage upon De Chambrun's interest was given. The transfers, about which there seems to be no dispute, aggregated over $150,000 in specific amounts in addition to about 30 per cent. of De Chambrun's interest. In other words, assuming the 47½ per cent. to amount to $178,000, he had transferred interests therein amounting to over $200,000. In addition to these, other agreements, which have been successfully disputed upon the law or the facts, transferred about 112 per cent. of De Chambrun's interest in the property. There is no question that De Chambrun had incumbered his interest for much more than its value. If the liens created and acknowledged by him were all paid there could be no remainder coming to him. Soon after the agreement between the French heirs and De Chambrun proceedings to recover the land were commenced, and after years of arduous litigation, in which the defendant Campbell acted as one of the counsel for the French heirs, a compromise was effected which resulted in these heirs recovering real property of the appraised value of $152,525.43, which was conveyed in the spring of 1883 to a trustee for their benefit.

Various efforts to adjust the interests of the different claimants to this fund having failed, a suit was commenced in January, 1886, by Stephen M. Chester, as assignee of the claim of one of the lawyers who had been retained by De Chambrun early in the proceedings, to have the amount of his lien and of the other liens determined and paid. All of the parties interested in the said fund, including De Chambrun and Campbell, were made defendants. The complaint set out, in extenso, all the facts relating to the Jumel litigation, the fact that De Chambrun, Campbell and the other parties with whom De Chambrun had contracted, claimed to share in and to have liens upon the said property, and demanded judgment that the plaintiff's lien and all other liens, including those of De Chambrun and Campbell, be fixed and their priority determined. The defendants all filed answers fully stating the nature of their interest in the fund. So far as Campbell and De Chambrun are concerned their respective claims, which were entirely antagonistic, were set out fully and in detail. There can be no pretense that De Chambrun after reading the averments of Campbell's answer, which was served upon him, had any doubt as to the nature of Campbell's position.

He knew that Campbell claimed to recover for his own services, and also as assignee under various contracts which had been transferred to him, and that each of these claims was alleged to be paramount and superior to any interest De Chambrun might have in the fund. In short, De Chambrun knew that Campbell made the same claims and took the same position in that action that he takes in this. On the other hand De Chambrun, who was an attorney and appeared in person, denied that Campbell and most of the other parties to whom he had before given assignments and liens had "any right, share, lien or interest in or upon the said lands and moneys."

The attitude of De Chambrun and Campbell in the Chester suit was one of bitter hostility. Each knew that the other's position if sustained would defeat his own; and though both were defendants their respective contentions were fully as antagonistic as if they had occupied the position of plaintiff and defendant. It was, in short, a struggle for priority among claimants to an inadequate fund. The trial of the issues thus joined was referred to Mr. Hamilton Cole, a prominent and most reputable member of the New York bar. At the trial De Chambrun was represented by counsel who objected to the proof of Campbell's claim and proposed findings which, if adopted, would have entirely excluded Campbell from participation in the fund. The referee declined to find as De Chambrun requested and the latter excepted to his rulings. The referee reported in favor of various lien holders and fixed the order of priority among them, awarding the balance, if any, to De Chambrun. On this report a decree was duly entered. De Chambrun, among others, appealed from this judgment, but it was finally affirmed by the court of appeals. Chester v. Jumel, 125 N. Y. 237, 26 N. E. Rep. 297.

Pending the suit of Chester v. Jumel an action was commenced by Jean Albert Tauziede, and another, against the same defendants, substantially, as in the Chester suit, praying that the trust property be sold, that the French heirs be paid the $52\frac{1}{2}$ per cent. due to them from the proceeds of such sale and that the remaining $47\frac{1}{2}$ per cent. be paid into court to be disposed of as the court might direct. Campbell and De Chambrun both answered, setting up facts, in substance, the same as in the Chester suit. The trustee having realized the sum of $336,226 from the sale of the property in his hands, judgment was entered in the Tauziede Case, on the 4th of October, 1888, providing for a division of the fund and fixing the amounts which should be paid to the various claimants. Subsequently they were paid pursuant to the terms of this judgment, which was affirmed by the court of appeals, May 3, 1892. Tauziede v. Jumel, 133 N. Y. 614, 30 N. E. Rep. 1000. The first conclusion of law in the Tauziede Case is as follows:

"It is ordered, adjudged and decreed that the judgment entered in this court on the 21st day of May, 1888, as directed by the report of Hamilton Cole, referee, in the action wherein Stephen M. Chester was plaintiff and Francois Henry Jumel and others were defendants, determines and adjudicates the rights of the parties hereto and is hereby declared to be conclusive upon all parties to this action."

Without dwelling further upon the details of the prior litigations it is thought that it may be stated generally that in the Chester and Tauziede Cases precisely the same questions were presented, or might have been presented, as in the case at bar. When the Chester Case was tried De Chambrun knew all the facts regarding Campbell's claim and his own claim that he knew when this suit was instituted. The parties were the same, the subject-matter was the same, and every argument now urged might have been urged, and many of them, apparently, were urged in those actions. De Chambrun appeared personally and by counsel and endeavored to defeat Campbell's claim. The court decided against him and sustained Campbell. He appealed and the judgment against him was affirmed. It is not pretended that this judgment was the result of any fraud on the part of the referee. Such a pretense was emphatically disclaimed on the argument, and it stands to-day as the executed judgment of the supreme court of New York, unimpeached and unimpeachable. That this judgment and a decree of this court rendered in accordance with the prayer of the bill would be hopelessly repugnant, cannot be denied. In fact, the Chester judgment having decided the same questions between the same parties, having settled the rights of the defendant Campbell and the complainant's intestate, and having ordered the distribution of the fund accordingly, stands an insurmountable barrier directly across the complainant's path.

The principal accusation against Campbell seems to center in the disposition of the so-called Chase claim. Nelson Chase was a tenant upon and a claimant of the Jumel estate, his title being disputed by the heirs of Stephen Jumel. On the 3d day of March, 1876, De Chambrun entered into a contract with E. Delafield Smith whereby he agreed to pay to said Smith an indebtedness due him from said Nelson Chase to the amount of about $25,000, which was "to be paid to the said Smith out of the proceeds of said Jumel estate so acquired by the said heirs, or any interest therein, after the payment of all proper disbursements, and is hereby made a charge upon the same." Smith died April 12, 1878. On the 17th of May, 1882, Margaret J. Smith, as executrix of E. Delafield Smith, assigned to Campbell all of the claims held by said Smith, including the Chase claim. She was, however, to receive $25,000 and interest, before any payment under the assignment was to be made to Campbell who assigned to her a lien upon the fund in his favor, created by De Chambrun, for $25,000. The bill alleges that the true intent and purport of these assignments was that the claim of the estate of E. Delafield Smith should, as between De Chambrun and the said Smith estate, be limited to the sum of $25,000. That Campbell was to hold the legal title to all the claims which E. Delafield Smith had upon the Jumel fund, including the Chase claim, subject only to his lien for legal services, in trust for De Chambrun, who was to have the balance after paying Mrs. Smith $25,000 and Campbell his charges as counselor. Complainant's contention is that if the Smith claims had been allowed in full, including the Chase claim, his intestate would have received a large sum, to wit, about $50,000.

All of the material facts regarding the Smith claim and the Chase claim were known to De Chambrun long before the Chester suit was instituted, yet in his answer he denies "that Douglas Campbell and Margaret J. Smith, individually or as executrix of the last will and testament of E. Delafield Smith, ° ° ° have any right, share, lien or interest in or upon the lands and moneys in the hands of the said" trustee. In their answers in the Chester suit Campbell and Mrs. Smith set out all the facts regarding these claims, and Campbell produced proof thereof at the hearing before the referee. The complainant's brief admits that "Campbell did in point of fact plead and prove the [Chase] claim." The proof was received against the objection of De Chambrun's counsel. Subsequently he presented requests to the referee, among them the following:

"That Margaret J. Smith is not entitled to recover in this action. That the contract of January 5, 1877, between De Chambrun and E. Delafield Smith gives no lien upon the property held by Elliott as trustee. That Douglas Campbell has no interest in or lien for legal services upon the contract and claims assigned to him by Margaret J. Smith on May 17, 1883."

These requests were refused and counsel for De Chambrun excepted.

The instrument of July 21, 1882, in which Campbell declared that he held the Smith assignments for the benefit of De Chambrun, subject only to his interest therein and lien thereon for legal services, was brought to the attention of the referee by another defendant, Mrs. Gesner, who is also a defendant in this suit. This instrument was put in evidence in the Chester suit by Mrs. Gesner, together with an assignment by De Chambrun to her of said instrument and all his right, title and interest therein. The referee found all these facts and in his tenth conclusion of law divided the fund in accordance with this declaration of trust of July 21, 1882. The court in the Chester Case had all the evidence that this court has and all the evidence that could be produced bearing upon the Chase claim. The referee made full findings regarding this claim, but did not allow it. Why he did not allow it is not a pertinent inquiry here. It is enough that with all the facts before him he did not do so. No one till now seems to have questioned his decision. It cannot be attacked collaterally. The only person connected with the Chester suit who took any steps to have the claim allowed was the defendant Campbell. He alleged the claim in his answer and proved it on the trial, and yet he is accused of negligence, conspiracy and fraud in not having had it allowed. De Chambrun, who did everything in his power to defeat the claim, now, through his representative, accuses Campbell of attempting to defraud him because he did not, in some way not pointed out, coerce the referee into finding that the claim was valid. The argument in this regard seems to proceed upon the theory that the referee was a mere puppet in the hands of Campbell and that the cause was decided by the latter and not the former. But all this is the merest conjecture without a particle of evidence to support it, and the theory cannot be reconciled with the well-known character of the referee for honor, independence and ability.

Campbell is repeatedly charged with neglect of duty, because he did not "procure" the allowance of the Chase claim and did in fact "procure its disallowance." By what means he could procure its allowance, other than by the means adopted by him of alleging and proving the claim, is not pointed out. Even if the claim were omitted by mistake it could not avail the complainant in this action, but that it was so omitted is simply incredible. The record shows that some 14 lawyers were engaged before the referee, the various questions raised were hotly contested and debated, an opportunity to propose findings was given to all, the referee had had large experience in such causes and the case went to the special term, the general term and to the court of appeals. To imagine that a mistake involving $50,000 could pass unnoticed through such an ordeal taxes credulity too far. So, also, the contention that Campbell and Schermerhorn were engaged in a conspiracy to impose upon the referee and cheat the defendant is not sustained by the evidence. The Chase claim was proved as the other claims were proved and the evidence was submitted to the referee. True, the referee decided against the claim as he did against several others, but fraud cannot be predicated of such a result There is no proof that Campbell imposed upon the referee or induced him to sign a report leaving out the Chase claim, or that he did any fraudulent act to induce the judgment in the Chester suit. Some facts and circumstances are pointed out from which inferences are drawn prejudicial to the fair dealing of Campbell, but this is not enough when it is sought to set aside a judgment on the ground of fraud. Something more than presumption and conjecture is needed.

Without pursuing the discussion further I may say, as a result of my examination of this complicated record, that I fail to find any proof which will warrant a finding that the Chester judgment was procured by the trickery or fraud of the defendant Campbell. This being so the well-known rule applies: That a judgment, not fraudulently procured, rendered by a court of competent jurisdiction in an action involving the same subject-matter between the same parties, or their privies, "is, as a plea, a bar, or, as evidence, conclusive" as to all matters actually determined or which might have been litigated and decided "as incident to or as essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense." The complainant's intestate proceeded in the Chester suit upon the theory that he could subordinate all the other liens to his. He was defeated and now his administrator seeks to recover upon a totally different and antagonistic theory which might have been presented in the Chester suit, but was not. It is too late now. Parties are not permitted so to experiment with the courts. The wise and salutary doctrine of res judicata is, it is thought, controlling of the issues in this cause. The bill is dismissed.