## Richmond.

### BRADSHAW v. BRATTON.

#### JANUARY 12, 1899.

Absent, Cardwell and Riely, JJ.

1. VALUABLE CONSIDERATION—*Refraining from Suit—Judgments.*—Refraining from instituting proceedings to subject land to the payment of a judgment which is a lien thereon, on a written promise by the owner of the land to pay the judgment, constitutes a valuable consideration for the promise to pay the judgment, although the land owner was not previously liable for the judgment.
2. JUDGMENTS—*Fraud in Procurement.*—A charge that a confession of judgment was obtained by fraudulently representing that the lien on the defendant's land for which lien the judgment was confessed, was still in force, when in fact it was at the time barred by the statute of limitations, of which the defendant was ignorant, is not sustained where it appears that, while the lien was in force, the defendant, for a valuable consideration, gave to the plaintiff a promise in writing to pay the *lien.* The defendant only did voluntarily what he might have been compelled to do, and has suffered no injury.

Appeal from a decree of the Circuit Court of Highland county pronounced October 5, 1896, in a suit in chancery wherein the appellee was the complainant, and the appellant was the defendant.

*Affirmed.*

The opinion states the case.

*Geo. M. Cochran* and *C. P. Jones,* for the appellant.

*R. L. Parrish* and *J. W. Stephenson,* for the appellee.

KEITH, P., delivered the opinion of the court.

Opinion.

The controlling facts in this controversy are as follows:

Bradshaw, as the administrator of David Lockridge, deceased, recovered a judgment on the 23d day of December, 1884, in the Circuit Court of Highland county, against Warren L. Gladwell, for the sum of $1,573.80, with interest from date. Upon this judgment an execution was issued on the 24th of December, 1884, which was retained in the clerk's office, and was subject to numerous credits. By deed dated January 28, 1888, Gladwell conveyed certain real estate bound by this judgment to Bradshaw, who, in his representative capacity, had obtained the judgment before mentioned. This judgment was assigned to the appellee, Bratton, to whom payments were from time to time made by Bradshaw. In 1893, Bratton, being in need of money, demanded payment of this judgment from Bradshaw, and, in response to the letter making the demand, Bradshaw replied as follows:

"McDowell, Va., July 11, 1893.

Mr. Geo. W. Bratton:

Dear Sir,—Yours has been received. I assure you it would afford me no little pleasure to send you all the money that is coming to you. But, as you know, times are very tight. I expected to have paid you before this, but the truth is I can't make collections of money that is coming to me. But I will pay you before you can make it by law, and it will put costs on the matter, and, if you have to sell the land to make the money out of it, the land will likely be sold on one, two, and three years' time. So you see it will not help the matter, for I think I can pay you before you could make it, if you were to sue me to-day; and I will, if possible, pay you $100 before long, if that will do you any good.

Hoping this will find you all well, I am,

Respectfully,

J. B. BRADSHAW."

In December, 1895, Bratton renewed his demand for money, and received a letter dated December 14th, as follows:

"McDowell, Va., December 14, 1895.

MR. GEO. W. BRATTON:

Dear Sir,—I have been putting off writing you for several days, expecting something to turn up by which I would have some money for you. Had a road contract just about done when this storm came and stopped me. If the weather opens up a little I hope to get some money out of that. I assure you it would afford me great pleasure to pay you some money right now, but it does seem that collection is awful hard to make, and almost all the people owe me. Please don't make any disposition of my paper till I can raise you some money. If any one wants to sue you, I will pay the cost and the debt, as soon as I can raise you some money, rather than have you put to cost. With thanks for your kindness in the past, and kind wishes for you and yours, I am,

Respectfully yours,<br>J. B. BRADSHAW."

In January, 1896, Bratton's necessities having become more urgent, he consulted his attorney, John W. Stevenson, about the collection of the Gladwell judgment, or the feasibility of using it as a security upon which to borrow money; was advised that, as the judgment stood in the name of Bradshaw, administrator of Lockridge, had been several times assigned, and a number of payments made upon it, and was moreover barred by the statute of limitations, it could not be made available for that purpose; and, at Bratton's instance, Stevenson had an interview with Bradshaw, explained to him Bratton's necessities, and was told that it was impossible for him to pay one dollar upon the debt. Stevenson reminded Bradshaw that Bratton had been kind and indulgent to him; that the judgment was in a condition that it could not be negotiated so as to get money upon it; and in response to Brad-

shaw's question as to how it could be arranged, Stevenson suggested a confession of judgment by Bradshaw to Bratton for the balance due on the Gladwell judgment. As a result of this interview, Bradshaw, after some hesitation, executed his bond to Bratton for $1,835.15, and, on the 28th of January, 1896, confessed a judgment for that amount. It had been agreed as a part of the arrangement entered into between Bratton and Bradshaw that the Gladwell judgment should be marked " satisfied," but by some oversight this was not immediately done, and upon discovering that fact, Bradshaw called upon Bratton and obtained from him the following paper, dated February 22, 1896 :

" CAPT. J. C. MATHENY :

J. B. Bradshaw having acknowledged judgment for eighteen hundred and odd dollars, and there being a judgment recorded in your office *vs.* W. L. Gladwell for the same debt, the former and latter judgments make two judgments for the same debt.

Therefore, not wishing to hold two judgments against said Bradshaw, you will please mark said latter judgment satisfied, and oblige,

GEO. W. BRATTON.

February 22, 1896.
            A copy—Teste :

J. C. MATHENY, Clerk."

Bradshaw took this paper to Matheny, the clerk, and induced him to mark as " satisfied " the judgment which he had confessed on the 28th day of January. Thereupon Bratton filed his bill alleging that Bradshaw, in procuring the paper from him on February 22, 1896, had practiced a fraud, and prayed to have the entry of satisfaction of his judgment made by the clerk of the county of Highland on the lien docket, and other records of his office, erased and annulled.

Bradshaw answered this bill, denied the fraud, and charged that the confession of judgment made by him on the 28th of

January was procured by the fraudulent representation made by Bratton through his attorney, John W. Stevenson, the statement relied upon as constituting the fraud being that Stevenson, at the interview which led up to the confession of judgment, represented the Gladwell judgment as still in force, when in fact it was at the time barred by the statute of limitations, of which Bradshaw was ignorant.

The Circuit Court held that the judgment confessed by Bradshaw was not obtained by misrepresentation, and that its release was obtained by a fraud upon Bratton.

The paper signed by Bratton in which is to be found the only semblance of authority to mark any judgment in his favor " satisfied," when properly construed, is plainly a direction to the clerk to enter satisfaction of the " Gladwell judgment," for that judgment, though prior in point of time, was the " *latter* " of the two judgments in the order in which they were mentioned by Bratton in his letter; and when Bradshaw induced the clerk to enter satisfaction of the judgment confessed by him on the 28th of January he was guilty of a fraud.

We are of opinion that the letters, especially that of July 11, 1893, constitute a promise to pay the judgment in controversy. There was no other transaction to which that letter could refer. There was no ground upon which Bratton could have made a demand of Bradshaw, except that he had purchased land bound by the Gladwell judgment. It is true that Bradshaw had never assumed its payment, but he had from time to time made payments upon it, and, at the date of this letter, it was a valid and subsisting charge upon real estate in his possession, to the enforcement of which in due course of law he could have interposed no defence. We have, then, a written promise on Bradshaw's part to pay the Gladwell judgment, and it only remains to consider whether that promise rests upon a sufficient consideration.

Bratton's letter to Bradshaw is not in the record, but its contents may be safely inferred from Bradshaw's reply. Bratton

was in need of money. He looked to this judgment as the means by which it might be procured. He demanded its payment, and he threatened suit. In reply, Bradshaw tells him, "I will pay you before you can make it by law, and it will put costs on the matter, and if you sell the land to make the money out of it, the land will be likely sold on one, two, and three years' time, so you see it will not help the matter, for I think I could pay you before you could make it, if you were to sue me to-day." There is no express acceptance of this promise, but the threatened suit was not instituted. Bradshaw's possession was not disturbed, and he was permitted to remain in the uninterrupted enjoyment of the land bound by this judgment. This was not a promise for the benefit of Gladwell, but one that inured to the benefit of the promisor.

In Smith's Leading Cases (8th Ed.), p. 546, it is said: "Even when the stay or withdrawal of a distress or execution, the dissolution of an attachment, or the extinguishment of an encumbrance, on the faith of a promise that the debt shall be paid, results in the loss of the only effectual means of obtaining payment from the debtor, the statute of frauds will operate as a bar, unless it appears that the property so released was the defendant's, or that he derived some benefit from the transaction of which the law can take cognizance."

It is true that the encumbrance was not extinguished as a condition or consideration for the promise, nor can the fact that it subsequently became barred be looked to as a part of the consideration, for it was not Bradshaw's debt, but that Bratton refrained from its enforcement on the faith of the promise was of great benefit to Bradshaw, and is as good, though not as great, a consideration as the extinguishment of the encumbrance would have been. The evidence establishes that there was a promise to pay the Gladwell debt; that the promise was in writing; that it rested upon a sufficient consideration; and that it was accepted and acted upon by Bratton.

Having reached the conclusion that Bradshaw, in January, 1896, was under legal obligation to pay the debt represented by the " Gladwell judgment," it of course follows that, in confessing the judgment which he now assails, he only did what Bratton could have compelled him to do by suit, and has suffered no injury.

For these reasons, without passing upon any other question, we are of opinion that there is no error in the decree of the Circuit Court, and it is affirmed.

*Affirmed.*