## Wytheville.

MOORMAN·V. BOARD OF.SUPERVISORS OF CAMPBELL COUNTY.

June 14, 1917.

Absent, Burks, J.

1. EXECUTIONS—*Return After Return Day—Limitation of Actions—Judgments.*—A valid return may be made after the day to which the execution is returnable. In the case at bar, the executions were returned "no effects" two days after the return day. This was clearly within a reasonable time, and, therefore, the returns were made in the lawful performance of a delayed duty. Such action was valid, and the returns sufficient to extend the limitation upon the judgments to twenty years from the return day of the executions.

2. PROCESS—*Mandamus—Return of Process Ministerial Act.*—The return of process by an officer is a ministerial act, and mandamus will lie to compel its performance. When performed it has every legal effect which it would have had if performed on the date required by law, unless some intervening superior right shall have accrued, or there be some express provision of law to the contrary.

3. EQUITY JURISDICTION—*Complete Relief.*—Where a court of equity acquires jurisdiction of a cause for any purpose, it will retain it and do complete justice between the parties, enforcing, if necessary, legal rights and applying legal remedies to accomplish that end.

4. EQUITY JURISDICTION — *Administration of Estates — Judgment Against Distributee—Marshalling Assets.*—The estate of an intestate was being fully administered by a court of equity. All of the persons interested in the funds were before the court, and there were no other claimants thereof, nor any intervening liens or equities in favor of any other persons. The court directed that the entire interest of an heir and distributee, in the personal as well as in the real estate, should be applied towards the satisfaction of judgments against him, upon which no executions had issued. The continuing right to issue executions upon the judgments was clear. It

was argued that this was error, because, there being no valid execution outstanding, there was no specific lien upon the distributee's interest in the personal estate.

*Held:* That the action of the court might be justified upon two grounds: First, that the court having acquired jurisdiction could retain it and do complete justice between the parties; and secondly, that as it appeared that the attorneys of the distributee and heir had a lien for their fees upon his entire interest, both real and personal, and the lien of the judgments being only upon the real property, the court, if necessary, would have marshalled the assets and applied the fund arising from the personal estate, first, towards the satisfaction of the lien of the attorneys for their fees so as to exonerate the real estate therefrom and to leave as large a fund as possible for the satisfaction of the judgments.

Appealed from a decree of the Circuit Court of Campbell county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie* and *Wilson & Mason,* for the appellant.

*Frank Nelson* and *Alexander H. Light,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The question in this case arises out of this state of facts: Winnington L. Moorman died leaving a considerable estate of which the appellant, Thomas B. Moorman, his brother, inherited one-sixth. Winnington L. Moorman had made a will, but in a suit instituted for that purpose the will was set aside as to its most important provisions. The board of supervisors of Campbell county then instituted its suit for the purpose of subjecting the interest of the appellant in the estate of Winnington L. Moorman to the lien of a judgment recovered many years theretofore. The two suits were thereafter heard together, and in addition to the judgment reported in favor of the board of supervisors of

Campbell county, the commissioner reported another judgment against the appellant in favor of the county school board of Campbell county. The estate consisted of real and personal property, and is being distributed under the direction of the court in these suits.

1. The first assignment of error is, that the judgments are barred by the statute of limitations, under section 3577 of the Code. It is contended that no valid returns were made upon the first executions issued, which were returnable to the rules on the first Monday in June, 1898, and that, therefore, the ten year limitation applies.

These returns both read thus: "No effects. June 8, 1898. R. L. Perrow, sheriff." The allegation is, that as the first Monday in June, 1898, was June 6th, and the returns are dated June 8, 1898, therefore the sheriff was without authority and these returns are invalid.

In *Hamilton* v. *McConkey*, 83 Va. 533, 2 S. E. 724, the return was, "Not levied by reason of stay law;" and the court determined that to be a sufficient return under the statute, as it then read, to make the limitation twenty years, saying, among other things, that "the question is not whether the return is true or false, sufficient or insufficient."

In *Rowe* v. *Hardy*, 97 Va. 675, 34 S. E. 625, 75 Am. St. Rep. 811, the subject is fully and clearly discussed by Riely, J. The return there was in this language: "Return this execution by order of attorney for the plaintiff. J. C. Rowe, D., for J. L. Waterman, S. G. C." The execution was returnable to February rules 1870, and it was not lodged in the clerk's office until March 19, 1870. This was determined to be a sufficient return to make the limitation twenty years. Since the dates of those returns the statute, by the Code of 1887, has been amended, and the last clause of section 3577 now reads: "Any return by an officer on an execution showing that the same has not been satisfied shall be a sufficient return within the meaning of this section."

In *Slingluff* v. *Collins*, 109 Va. 717, 64 S. E. 1055, 17 Ann. Cas. 456, the return was, "No effects known to me this 8th

day of November, 1889," but was not signed, and the sheriff was permitted to amend his return in 1908 by having the deputy who made the return upon the original execution sign it.

The clear and necessary implication of section 901 of the Code is that a valid return may be made after the day to which the execution is returnable, because it subjects an officer failing to make returns to a fine "for each month subsequent to the judgment that the failure may continue, or until it appear that the return cannot be made, or, if it be the case of an execution or warrant of distress, until it appear that the amount thereof is paid to the party entitled." This statute would fail to accomplish its manifest purpose if such belated return by an officer, which may be thus enforced, is an invalid return. Indeed, if any public official fails to perform a duty upon the date upon which the law requires it to be performed, then he should certainly discharge that duty as soon thereafter as possible, and private rights should not be imperiled by the failure of an official to do his duty upon a specified date. The return of process by an officer is a ministerial act, and mandamus will lie to compel its performance. When performed it has every legal effect which it would have had if performed on the date required by law, unless some intervening superior right shall have accrued, or there be some express provision of law to the contrary. An execution may not be levied after the date upon which it is returnable, and the imperative duty to return does not arise until it is no longer possible to levy it. The life of the execution ends upon the date to which it is returnable, and the duty to return it then arises. That duty should be promptly performed.

Dr. Lile, in an illuminating note on *Rowe* v. *Hardy*, in 5 Va. Law Reg. 672, says this: "Another point of equal importance, likewise settled most satisfactorily in the opinion, is, that the return of an execution is valid though made after the return day. How long afterwards, would doubt-

less depend upon the peculiar circumstances of the case, and especially upon the existence or non-existence of intervening equities of third persons acquired in reliance upon the absence of a return. If justice required it, and there were no rights of innocent third persons affected, doubtless there is no specific limit to the time within which a valid return of an execution may be made, even though the sheriff's term of office may have expired in the meanwhile."

In this case the executions were returned two days after the return day, and this was clearly within a reasonable time; therefore the returns were made in the lawful performance of a delayed duty. Manifestly such action was valid, and the returns sufficient to extend the limitation upon the judgments to twenty years from the return day of the executions.

The trial court rightly decided that the judgments here attacked were valid and subsisting liens, and that the right to issue executions thereon had not expired.

2. Another question arises out of the fact that a second execution had been issued on one of these judgments, the purpose apparently being thereby to acquire a lien upon the share of appellant in the personal estate of Winnington L. Moorman. This execution was adjudged to be invalid, upon the motion of appellant, and the appellee has apparently acquiesced in that decree. The court, however, directed that the entire interest of the appellant in the personal as well as in the real estate should be applied towards the satisfaction of the judgments. It is argued by the appellant that this was error, because, there being no valid execution outstanding, there was no specific lien upon appellant's interest in the personal estate. This is true, but, nevertheless, this action may be justified upon two grounds:

(a) Upon the well settled equitable doctrine, which is thus succinctly expressed in *Laurel Creek, &c. Co.* v. *Browning,* 99 Va. 529, 39 S. E. 158: "Where a court of equity acquires jurisdiction of a cause for any purpose, it will retain

it and do complete justice between the parties, enforcing if necessary legal rights and applying legal remedies to accomplish that end."

While it is hardly necessary to cite authority in support of this rule, we note that it has been applied in Virginia in *Moores* v. *White,* 3 Gratt. (44 Va.) 143; *Miller* v. *Wills,* 95 Va. 337, 28 S. E. 337; *Woolfolk* v. *Graves,* 113 Va. 190, 69 S. E. 1039, 73 S. E. 721.

This rule should be applied here. The estate of Winnington L. Moorman was being fully administered. All of the parties interested in the funds were before the court, and there were no other claimants thereof, nor any intervening liens or equities in favor of any other persons. The continued right to issue executions upon the judgments was clear, and the court properly directed the application of the proceeds of the personal property belonging to appellant to the satisfaction of his debt to the appellees.

(b) The decree can also be sustained by the application of that favorite of equity, the doctrine of marshalling of assets and securities. In the course of the litigation the attorneys who had represented the appellant as one of the heirs at law, and had succeeded in setting aside the will of Winnington L. Moorman and thus establishing his rights, were adjudged, under their contract, to be entitled to one-third of his interest in the decedent's estate, real and personal. Inasmuch as the lien of the attorneys for their fees was upon both the real and personal property, and the lien of the judgment only upon the real property, the court, if necessary, would have marshalled the assets and applied the fund arising from the personal estate, first, towards the satisfaction of the lien of the attorneys for their fees so as to exonerate the real estate therefrom and to leave as large a fund as possible for the satisfaction of the judgments. This established doctrine has been frequently enforced in Virginia, and the cases are collected in 9 Enc. Dig. Va. & W. Va. Rep., p. 595.

The decree will be affirmed.                    *Affirmed.*