Steinman

STEINMAN V. CLINCHFIELD COAL CORPORATION.

September 20, 1917.

Absent, Sims, J.

1. RES JUDICATA—*Final Judgment.*—In order for a judgment to constitute *res judicata*, it must be a final judgment in the case on the merits.

2. RES JUDICATA—*Final Judgment.*—A judgment of the United States Circuit Court of Appeals which remanded the case to the district court "for further proceedings in accordance with the views herein expressed," is not a final judgment.

3. RES JUDICATA—*Final Judgment—Remand.*—A reversal in a court of last resort *remanding a cause*, cannot be set up as a bar to a subsequent action for the same cause.

4. RES JUDICATA—*Stare Decisis—"Law of the Case."*—Closely akin to the doctrine of *res judicata* is that of "the law of the case." It is sometimes treated under *"res judicata,"* and sometimes under *"stare decisis,"* but it occupies a distinct field of its own, though it is at times confused with one or the other of the other two.

5. "LAW OF THE CASE"—*Statement of the Doctrine—Final Judgment.*—Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law. It differs from *res judicata* in that the conclusiveness of the first judgment is not dependent upon its finality. The first judgment is generally, if not universally, not final.

6. "LAW OF THE CASE"—*Adjudication of Questions Involved.*—The doctrine of the "law of the case," as stated in the preceding syllabus, applies where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not.

7. "LAW OF THE CASE" — *Subsequent Litigation Between Other Parties.*—The doctrine of the "law of the case" presupposes error in the enunciation of a principle of law applicable to the facts of a case under review by an appellate tribunal, but the ruling adhered to in the single case where it arises is not carried into other cases as a precedent.

8. "LAW OF THE CASE"—*Different Facts.*—The doctrine of the "law of the case" can only be invoked where the facts reappear on the second trial the same as when originally presented. Nothing is more common than a material difference between the facts presented on a second trial from those shown on the first trial, and the "law of the case" is applicable to the state of facts existing at the time the law is announced. There is nothing in the rule to inhibit a party, on a second trial, from supplying omitted facts or from averring a different state of facts.

9. "LAW OF THE CASE"—*Jurisdiction of Court in First Case—Res Judicata.*—Sometimes even between the same parties and relating to the construction of the same instrument, the first judgment is neither *res judicata,* nor the "law of the case." It must appear not only that the question was the same in both cases, but that the court in the first suit had power and jurisdiction to determine the question.

10. "LAW OF THE CASE"—*Different Parties—Stare Decisis.*—If the parties are different, though the question be the same, the case is controlled by the rule of *stare decisis,* and the doctrine of "the law of the case" has no application.

11. "LAW OF THE CASE"—*Court of Foreign Jurisdiction.*—The doctrine of the "law of the case" does not apply to a former decision, in unended litigation, by a court of a foreign jurisdiction. Consequently, a judgment of the United States Circuit Court of Appeals remanding the case for a new trial is not, where plaintiff took a nonsuit and brought his action for the same cause in the State court, the law of the case in the latter action.

12. RECORDING ACTS—*Section 2465, Code of 1904—Purchaser for Value and Without Notice—Fair and Adequate Consideration.*— Under section 2465, Code of 1904, an unrecorded deed is void as to a subsequent purchaser for value and without notice, and to constitute a purchaser for value in this State, it is not required that the consideration should be either fair or adequate, as is required in some States, but simply that the purchase should be for value; and even where adequate consideration is required it has been held that "no consideration of

any value at all, upon which parties capable of contracting with each other, and in the absence of fraud, may agree, can be said, in a legal sense, to be inadequate."

13. RECORDING ACTS—*Purchaser for Value—Burden of Proof.*— Plaintiff claimed to be a purchaser for value without notice of a prior deed, under which defendant claimed. Defendant attempted to show that even if the plaintiff was a purchaser for value, he was a purchaser with notice of the defendant's title.

   *Held:* That the burden was upon the plaintiff to show that he was a purchaser for value, and that the purchase price had been actually paid before notice of the defendant's title; and that the burden of showing notice rested upon the defendant.

14. NOTICE—*Constructive Notice—Agency—Bona Fide Purchaser.*— Notice to an agent of a party is constructive and not actual notice to the principal. But where one claims as purchaser for value without notice, it is immaterial whether the notice was actual or constructive.

15. SECTION 2510, CODE OF 1904—*Suit For the Recovery of Land.*— A suit to subject land to the payment of a judgment is not a suit for the recovery of land, and section 2510 of the Code of 1904, providing for the record of any recovery of land under judgment or decree, has no application to the decree rendered therein.

16. JUDGMENTS AND DECREES—*Binding Upon Parties and Privies.*— Parties to judgments and decrees, and their privies, are, in the absence of statute requiring recordation, bound by said judgments and decrees without any other notice than that furnished by the proceeding itself.

17. PRIVIES—*Judgments and Decrees.*—One who has succeeded to the right, title or interest of another in real estate is a privy in estate, and is bound by judgments and decrees against his grantor. The judgment disposes of the rights of the parties and is a matter of public record. Its effect cannot be impaired by any subsequent transfer by the defendant. This must of necessity be true. There would be no end of litigation if the effect of a judgment or decree could be avoided by a simple transfer of the property by the unsuccessful litigant as soon as an adverse judgment or decree was rendered. Decrees are rendered every day construing contracts, deeds, wills and other documents, and such decrees bind not only the parties to the litigation, but all persons claiming under them, with or without notice of the decree. The privies can stand on no higher footing than their principals.

18. JUDGMENTS AND DECREES—*Privies—Necessary or Proper Parties.*—Judgments bind the actual parties to the suit, whether they were necessary parties or simply proper parties.

19. JUDGMENTS AND DECREES—*Necessary or Proper Parties.*—In a bill to subject land to the payment of a judgment against C., it was alleged that F., the former owner of the land, had conveyed the land to C., but that the deed had been lost. F. was directly interested to show that the land had not been paid for, or that he had not made any deed. The decree made in the case which set up the lost deed and subjected the land as the land of C. would not have been binding upon F. if he had not been a party to the suit, and he was at least a proper party, if not a necessary party, so as to give him an opportunity of defending his title, or if he admitted the conveyance of the title, to preclude him in the future and those claiming under him, from gainsaying C.'s title to the land.

20. EQUITY JURISDICTION—*Complete Remedy.*—Equity has jurisdiction of a bill to enforce a judgment lien under section 3571, Code of 1904, and having acquired jurisdiction for this purpose, it will go on and do complete justice between the parties, even to the extent of enforcing purely legal demands of which it would not otherwise have jurisdiction.

21. LOST INSTRUMENTS—*Jurisdiction of Equity.*—Whether equity has inherent jurisdiction to set up a lost instrument or not, it clearly has jurisdiction to enforce a judgment lien, and having acquired jurisdiction on this ground, it can retain the case so as to do complete justice between the parties, setting up a lost deed if necessary for this purpose; and this, although the suit does not conform to the statutory requirements for setting up lost instruments.

22. EQUITY—*Bill in Equity—Prayer for General Relief.*—A prayer for general relief should never be omitted in any bill in equity, for the reason that if the special relief prayed for cannot be given, the court may under the prayer for general relief grant proper relief consistent with the case made by the bill.

23. EQUITY—*Bill in Equity—Prayer for General Relief.*—This principle is so well known in the profession that it is difficult to believe that a lawyer of any experience would prepare a bill omitting the prayer for general relief, and as it is so universally inserted, it is likely that in taking a memorandum from the bill no particular attention would be paid to its insertion.

24. EQUITY—*Bill in Equity—Prayer for Relief.*—A prayer to subject land to the payment of a judgment carried with it necessarily an implied prayer to do whatever else was necessary and proper for the enforcement of the lien of the judgment

upon the land. The removal of a cloud occasioned by the loss of the judgment debtor's deed was an essential step in subjecting the land to the payment of the judgment.

25. JUDICIAL SALES—*Removal of Cloud.*—There is no subject about which the courts are more careful than that of judicial sales. It is the effort of the courts at all times to see that the land is brought to the hammer under the most advantageous circumstances so as to realize the best price that can be obtained therefor, and to protect the interests of all parties, and it has been held that before a sale of land is decreed any cloud on the title or any impediment to a fair sale ought to be removed as far as it is practicable to do so.

26. JUDICIAL SALES—*Ascertainment of Liens.*—It is premature and erroneous to order a judicial sale to satisfy encumbrances on land before ascertaining the liens binding the land, their amounts and respective priorities.

27. LIS PENDENS—*Statutes—Code of 1904, Section 3566.*—Code of 1904, section 3566, requiring the docketing of a *lis pendens,* in order to affect a purchaser for value and without actual notice, applies only to a purchaser of real estate in a pending suit, not to a purchaser after the suit has been terminated by a judgment or decree, nor to a purchaser of personal property. Prior to the enactment of this statute, any suit at law or in equity which concerned the title to real estate was notice to all the world of the title of the respective parties to the suit, and whoever bought of either party pending the suit was charged with notice of title set up by the other, and was bound by any judgment or decree affecting that title which was rendered in the suit. The rule is the same now as to personal property, but it has been changed as to real estate so as to require the docketing of a *lis pendens* in order to affect a purchaser for value and without actual notice. The change wrought by the statute applied only to a purchaser of real estate in a pending suit. It was not extended to a purchaser of personal property, nor to the effect of a judgment or decree after the termination of a suit.

Error to a judgment of the Circuit Court of Dickenson county. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Irvine & Stuart,* for the plaintiff in error.

*Fulton & Vicars, Bond & Bruce* and *Morison, Morison & Robertson* and *W. H. Rouse,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

A. J. Steinman brought an action of ejectment in the District Court of the United States for the Western District of Virginia against the Clinchfield Coal Corporation, to recover all of the bituminous and other coal, iron ore and other minerals underlying a tract of 1,000 acres of land in Dickenson county. The plaintiff offered in evidence the following chain of title: Deed from Philip Fleming to A. J. Steinman and J. D. Price, dated December 18, 1874, recorded December 21, 1874; deed from J. D. Price to A. J. Steinman, dated December 31, 1874, recorded November 4, 1875.

In order to avoid the necessity of tracing his title back to the Commonwealth, the plaintiff relied upon Philip Fleming as the common source of title under which both he and the defendant claimed. The deed under which the defendant claimed title from Fleming was prior in point of date and delivery to the deed under which the plaintiff claimed, but the plaintiff claimed that he was entitled to recover as an innocent purchaser for value and without notice of such prior rights. In order to show that he was such innocent purchaser, he offered the following papers as links in the chain of the defendant's title: Three decrees in the case of Lipps against Collier, Philip Fleming, and others, dated respectively October 23, 1872, May 22, 1873, and April 6, 1874. The second of those decrees, recorded in the deed book of Wise county, in which county the land in controversy was then located, finds that a deed executed by Philip Fleming to James A. Collier, properly ac-

knowledged, conveying the land in controversy, had been lost, and decrees that Collier shall hold the land free from all claims of Fleming and others; and that this decree shall be recorded and indexed in the deed book of Wise county, which was accordingly done more than a year prior to the conveyance from Fleming to A. J. Steinman and Price.

The plaintiff further offered in evidence sundry deeds to show a chain of title from Collier down to the defendant, which need not be here particularly recited.

The decrees above mentioned were rendered in a suit brought by Lipps against Collier and others, to set aside a deed which Collier had made to a trustee for the benefit of his wife and to subject the land to the payment of a judgment in favor of Lipps against Collier. The plaintiff claims that he had neither notice nor knowledge of the suit, or of the decrees entered therein.

The original papers in this cause have been lost or destroyed, but sufficient appears to show that the plaintiff, Lipps, averred in his bill that Fleming had conveyed the land to Collier, but that the deed had been lost. This averment was apparently necessary in order to show that Collier was the owner of the land, and that it was liable to his judgment, and, in order that a purchaser at the sale might acquire title, Fleming was made a party defendant.

At the conclusion of the evidence, on the motion of the plaintiff, Steinman, the district court directed the jury to return a verdict in favor of the plaintiff for the coal and underlying minerals in a tract of about 395 acres, which is the land in controversy in this suit. The jury returned their verdict accordingly, and the court entered judgment thereon in favor of the plaintiff. To this action of the court the defendant, the Clinchfield Coal Corporation, excepted, and obtained a writ of error from the United States Circuit Court of Appeals, Fourth Circuit. The Circuit Court of Appeals (213 Fed. 557, 130 C. C. A. 137) reversed

the judgment of the district court, and held that the decree in the Lipps suit was a decree for the recovery of land within the meaning of section 2510 of the Code of Virginia, and that the decree in the Lipps case was properly recorded and indexed, and hence that Steinman was a purchaser with notice.

The case was argued at length in the Circuit Court of Appeals, both on a hearing and a rehearing, but the court on the rehearing adhered to its decision made on the original hearing, and remanded the cause to the district court for a *new trial.* When the case came back to the district court, the plaintiff suffered a non-suit, and brought the present action of ejectment in the Circuit Court of Dickenson county.

On the trial of the case in Dickenson county, the parties waived a jury and submitted all matters of law and fact to the trial court for decision, and by agreement between counsel it was stipulated that the evidence in the case, and the only evidence, should be the same which was introduced by the respective parties in the case recently pending in the District Court of the United States for the Western District of Virginia, at Big Stone Gap, under the title of *A. J. Steinman* v. *Clinchfield Coal Corporation, et al.,* and that the printed records used on appeal in the last mentioned case in the United States Circuit Court of Appeals, together with a copy of the final opinion of said court in said cause, and of the mandate of said court, and the final order of the district court which dismissed the cause, on motion of the plaintiff, should be placed in the hands of the court and used and considered by it as if the same evidence appearing in said record were re-introduced, and the same objections in all respects made to the said evidence as introduced by the respective parties thereto.

The Circuit Court of Dickenson county entered judgment for the defendant, the Clinchfield Coal Corporation. To that judgment this writ of error was awarded.

It was contended in the trial court, and is insisted upon with great earnestness in this court, that the judgment of the Circuit Court of Appeals was a final determination of the controversy in favor of the defendant, and that, under the Constitution and laws of the United States, the State courts are bound by the decision of the said federal court and have no jurisdiction to overrule, reverse or in any manner modify the same, and that whether they have such jurisdiction or not, they are bound by the said decision of the United States court as a former adjudication of the question at issue by a court of competent jurisdiction between the same parties, and upon the same issue. It was further insisted that, if this position be not correct, the case on its merits should be decided in favor of the defendant for the same reasons given by the Circuit Court of Appeals.

The defense set up by the Clinchfield Coal Corporation, that the judgment of the United States Circuit Court of Appeals settles the question at issue between the parties and is *res judicata*, cannot be sustained, for the simple reason that the judgment did not *finally* dispose of the issue between the parties, but remanded the case to the district court "for further proceedings in accordance with the views herein expressed." The authorities uniformly agree that in order for a judgment to constitute *res judicata* it must be a final judgment in the case on the merits. Story's Eq. Pl. (4th ed.), sec. 791; *Yates* v. *Wilson*, 86 Va. 625, 627, 10 S. E. 976; 23 Cyc. 1232; 24 Am. & Eng. Enc. Law (2d ed.) 793. In the instant case there was no final judgment, but a remand of the case for a new trial, on which the evidence may be entirely different from that on the former

trial. A reversal in a court of last resort *remanding a cause,* cannot be set up as a bar to a subsequent action for the same cause.

"Unless a final judgment or decree is rendered in a suit, the proceedings in the same are never regarded as a bar to a subsequent action. Consequently, where the action was discontinued, or the plaintiff became non-suit, or where from any other cause, except perhaps in case of a *retraxit,* no judgment or decree was rendered in the case, the proceedings are not conclusive." *Aurora City* v. *West,* 7 Wall. 82, 93, 19 L. Ed. 42, and cases cited. *Omohundro* v. *Omohundro,* 27 Gratt. (68 Va.) 824; *Chrisman* v. *Harman,* 29 Gratt. (70 Va.) 494, 26 Am. Rep. 387; *Smith* v. *Blackwell,* 31 Gratt. (72 Va.) 291.

Closely akin to the doctrine of *res judicata,* however, is that of "the law of the case." It is sometimes treated under *"res judicata,"* and sometimes under *"stare decisis,"* but it occupies a distinct field of its own, though it is at times confused with one or the other of the other two. It is this doctrine of "the law of the case" rather than that of *res judicata* upon which the defendant relies.

The doctrine, briefly stated, is this: Where there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose of that case, though only for that case, the decision on the first appeal is the law. It differs from *res judicata* in that the conclusiveness of the first judgment is not dependent upon its finality. The first judgment is generally, if not universally, not final. The reason of the rule is twofold. First, after the rehearing period has passed, the appellate court has no power to change its judgment and the mandate for retrial removes the case

from its jurisdiction. Second, it is necesary to the orderly and efficient administration of justice. It would greatly increase the labor of appellate courts and the costs to litigants if questions once considered and determined could be reopened on any subsequent appeal. The doctrine has been applied in many cases by this court, some of which are here cited. *Howison* v. *Weeden*, 77 Va. 704; *Stuart* v. *Preston*, 80 Va. 625; *Carter* v. *Hough*, 89 Va. 503, 16 S. E. 665; *Lore* v. *Hash*, 89 Va. 277, 15 S. E. 549; *Diamond State Iron Co.* v. *Rarig*, 93 Va. 595, 25 S. E. 894; *Rosenbaum* v. *Seddon*, 94 Va. 575, 27 S. E. 425, 1 Va. L. Reg. 270 and cases cited; *Norfolk & W. R. Co.* v. *Duke*, 107 Va. 764, 60 S. E. 96. See also, 26 Am. & Eng. Enc. Law 184 *et seq.*, and cases cited; 3 Words and Phrases (2d ed.) 37. The rule also applies where the question raised on the second appeal was necessarily involved in the first appeal, whether actually adjudicated or not. *Norfolk & W. R. Co.* v. *Duke, supra*, and cases cited. The case last cited well illustrates this feature of the rule. It has been held in (*Wilson* v. *Dawson*, 96 Va. 687, 32 S. E. 461) that a proceeding by motion for *damages* would not lie under section 3211 of the Code as it then stood. Nevertheless, the plaintiffs in the case proceeded by motion for damages against the defendant, and there was a judgment for the defendant. On a writ of error awarded the plaintiff the judgment was reversed and the case remanded for a new trial. *Duke* v. *Norfolk & W. R. Co.*, 106 Va. 152, 55 S. E. 548. No objection to the proceeding by motion had been made by the defendant either in the trial court or in this court, but on the new trial ordered by this court, the objection was made for the first time in the trial court, and it was held too late to raise the question; that the right to proceed in this way was necessarily involved in the first writ of error and hence became

"the law of the case," and was conclusive on the parties and the courts. *Norfolk & W. Ry. Co.* v. *Duke,* 107 Va. 764, 60 S. E. 96.

It is not to be supposed, however, that this court could not, in another case, between other parties, adhere to its opinion given in *Wilson* v. *Dawson, supra,* that a motion would not lie for damages. The "law of the case," for the reasons stated, binds the court and the parties in the same litigation, and the final judgment rendered is as much *res judicata* as any other final judgment, but neither the court which rendered the first judgment, nor any other court, is bound to follow it as a precedent in subsequent litigation between other parties. If, in such litigation, it is found to be erroneous, it will not be followed. "The doctrine of the 'law of the case' presupposes error in the enunciation of a principle of law applicable to the facts of a case under review by an appellate tribunal, but the ruling adhered to in the single case where it arises is not carried into other cases as a precedent." *Allen* v. *Bryant,* 155 Cal. 256, 100 Pac. 704; 3 Words and Phrases (2d ed.) 39.

Again, the doctrine of the "law of the case" can only be invoked even between the same parties where the facts reappear on the second trial the same as when originally presented. Nothing is more common than a material difference between the facts presented on a second trial from those shown on the first trial, and the "law of the case" is applicable to the state of facts existing at the time the law is announced. There is nothing in the rule to inhibit a party, on a second trial, from supplying omitted facts or from averring a different state of facts. 26 Am. & Eng. Enc. Law (2d ed.) 191; *Carper* v. *Norfolk & W. R. Co.,* 95 Va. 43, 27 S. E. 813.

Sometimes even between the same parties and relating to the construction of the same instrument, the first judgment is neither *res iudicata,* nor the "law of the case." It

must appear not only that the question was the same in both cases, but that the court in the first suit had power and jurisdiction to determine the question. In *McCartney* v. *Osburn*, 118 Ill. 403, 9 N. E. 210, it was held that where lands devised are situated in the States of Pennsylvania and Illinois, and the courts of Pennsylvania have construed the will in a suit for partition of the lands in Pennsylvania, the judgment in that suit does not operate as an estoppel in a suit before the Illinois courts for the partition of the Illinois lands, and the Illinois court is not bound by the construction of the will adopted by the courts of Pennsylvania, although the testator was domiciled there. The reason, of course, is that the Pennsylvania court had no power over the Illinois lands. In that case, the Illinois court put a different construction upon the will from that placed upon it by the Pennsylvania court.

It seems hardly necessary to add that, if the parties are different, though the question be the same, the case is controlled by the rule of *stare decisis*, and the doctrine of "the law of the case" has no application.

So, likewise, upon principle and authority, the doctrine of the "law of the case" does not apply to a former decision, in unended litigation, by a court of a foreign jurisdiction. There is no reason why it should. If the litigation in another jurisdiction is not ended, and the opinion or judgment stops short of the dignity of *res judicata*, no reason is perceived why it should be binding on the courts of this Commonwealth. Of course, such opinions and judgments are always entitled to, and will receive, the most careful and respectful consideration, but they are in no sense binding.

In *Hooper* v. *Atlanta, K. & N. R. Co.*, 106 Tenn. 28, 60 S. W. 607, 53 L. R. A. 931, an action to recover damages for a personal injury, brought in the State court, was removed into the United States Circuit Court on the ground

of diversity of citizenship. There was a verdict and judgment for the plaintiff, which, on a writ of error from the Circuit Court of Appeals was reversed on the ground that the plaintiff's claim was barred by the Tennessee act of limitations, and the cause was remanded to the court "whence it came, with directions to grant a new trial, to sustain the plea of the statute of limitations made to the amended declaration, and to enter judgment for the defendant." On this remand of the case to the lower court, the former judgment was set aside and a new trial granted. At this stage of the case, and before a new trial was had, the plaintiff took a voluntary non-suit and the cause was dismissed. From this judgment of dismissal the defendant company prosecuted a writ of error to the United States Circuit Court of Appeals, insisting that under the former mandate of reversal, the lower court should have entered a final judgment in favor of the defendant company, but the Circuit Court of Appeals sustained the judgment of the lower court in regard to the dismissal. See *Railroad Co.* v. *Hooper,* 44 C. C. A. 586, 105 Fed. 550. In the meantime, after the voluntary non-suit and dismissal of the case in the United States Circuit Court, the plaintiff brought a new suit for damages in the State Circuit Court of Knox county; the amount sued for in this latter suit not being sufficient to allow defendant to again remove to the federal court. The defendant company demurred on several grounds, and particularly because the removal of the original suit to the federal court had removed not only that suit but the cause of action; that the State court was thereby deprived of all jurisdiction over the subject matter of the suit, and the new suit could not be maintained in the State court. The circuit judge sustained this demurrer on the grounds stated, and dismissed the plaintiff's

suit. On appeal to the Supreme Court of Tennessee, that judgment was reversed and the cause remanded. The court, amongst other things, held:

"The State court possesses original jurisdiction for all such causes of action. The removal of the case, and its subsequent dismissal untried and undetermined, cannot, under any known rule of law, be held to be a merger of the cause of action, nor can the removal and dismissal of the cause be pleaded in abatement of the new suit brought in the State court. When a cause of action removed into a court of the United States is dismissed therefrom without any trial or determination of the merits, the right of action still remains in full force and vigor, unaffected thereby, and the party having such right of action may bring suit thereon in any court of competent jurisdiction, the same as though no previous suit had been brought."

On the remand of the cause to the Circuit Court of Knox county, such other proceedings were had as that the case again came to the Tennessee Supreme Court on writ of error. *Hooper* v. *Atlanta R. & N. Co.,* 107 Tenn. 712, 65 S. W. 405. It was then said:

"It is insisted, however, on behalf of the company, that the adjudication of this question by the United States Circuit Court of Appeals, in a suit between the present parties, was final and conclusive. As already stated, the United States Circuit Court of Appeals, in the suit between these parties, held the plea of the statute of limitations good, and remanded the cause, with direction to the lower court to grant a new trial, to sustain the plea of the statute of limitations to the declaration as amended, and to enter judgment for the defendant company. On the remand, and prior to a new trial, plaintiff took a voluntary non-suit. Defendant appealed to the Circuit Court of Appeals, insisting it was entitled to a judgment on its plea of the statute of limitations, and that the court below was in

79

error in permitting a non-suit. On this subject that court, interpreting its own judgment, held as follows: 'The contention of the plaintiff in error is that the circuit court should have ordered that the defendant's plea of the statute of limitations be sustained, and entered judgment for the defendant in strict conformity with the direction of the mandate. The ground of complaint is that, whereas the judgment directed by the court would have terminated litigation by settling the rights of the parties, the judgment actually entered leaves the plaintiff at liberty to prosecute a new action for the same cause. But we think the course taken by the circuit court was entirely proper. The direction of the mandate, when rightly construed, intended to award the privilege to the plaintiff of having a new trial, if he should desire it, and did not make it compulsory. If the plaintiff should elect to take a new trial, then the further directions of the mandate would govern the court in its further proceedings thereon. Such provisional directions are not unusual in appellate courts, the object being to guide the court below in such further course of procedure. Under the statute of Tennessee (Code 1871, 4246), 'the plaintiff may at any time before the jury retires, take a non-suit or dismiss his action, as to any one or more defendants; but if the defendant has pleaded a set-off or counter-claim, he may elect to proceed on such counter-claim in the capacity of plaintiff.' And at the common law the plaintiff may take a non-suit before the trial begins, and in some jurisdictions at any time before verdict, and the right is the same, whether upon the first trial or upon a new trial, after judgment has been ordered set aside and held for naught, and such new trial ordered. 6 Enc. Pl. & Prac. 836, 838, 839, and cases cited. In the case of *Gardner* v. *Railroad*, 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107, the plaintiff had brought a suit in the State court for a personal injury, and had recovered a judgment.

The defendant removed the cause to the supreme court, and that court, upon consideration of the evidence, held that the plaintiff had not made out a cause of action, and for that reason the judgment of the lower court was reversed, and a new trial granted. After the case had been remanded, the court below entered an order setting aside its former judgment and ordering a new trial. Thereupon the plaintiff voluntarily submitted to a non-suit, and judgment was entered accordingly. The plaintiff having commenced a new suit in the federal court, one of the questions was whether he was barred by the determination of the facts and the judgment of the State Supreme Court in the former action. After judgment, the same went to the Supreme Court of the United States, where it was held that by reversal of the judgment of the lower court by the State Supreme Court, the matter was set at large, and that, although the lower court had actually ordered a new trial, as directed by the supreme court, the plaintiff was at liberty to disclaim the right to pursue it, and to become non-suit, and thereupon to commence a new suit in any court having jurisdiction. In the present case, this court did not assume the power of arbitrarily compelling the plaintiff to go to a final determination in the court below. This is the reasonable construction of the mandate. The judgment of the circuit court is affirmed with costs.'

"The judgment of the Circuit Court of Appeals was not a final judgment, and therefore could not support a plea of former adjudication. *Railroad* v. *Brigman,* 95 Tenn. 624, 32 S. W. 762. But for the error of the circuit court in holding plaintiff's action barred by the statutes of limitations, the judgment is reversed and the cause remanded."

The same question came again before the Supreme Court of Tennessee in *Illinois Cent. R. Co.* v. *Bentz,* 108 Tenn. 670, 69 S. W. 317, 58 L. R. A. 690, 91 Am. St. Rep. 763, upon a similar state of facts, and the court said that counsel had

at first insisted that the judgment of the Circuit Court of Appeals was *res judicata,* but that they had now somewhat abated their claim, and insisted that the decision was the "law of the case." The court, however, adhered to its former views, and said that the decision of the Circuit Court of Appeals was neither *"res judicata"* nor the "law of the case." A number of decisions of the Supreme Court of the United States are cited, and distinguished from the case under consideration. See also, *Gardner* v. *Railroad Co.,* 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107.

In *Gassman* v. *Jarvis* (C. C.), 100 Fed. 146, it is held that, when a cause of action removed into a court of the United States is dismissed therefrom, without a trial or determination of the merits, the right of action still remains in full force and vigor, unaffected thereby; and the party having such right of action may bring suit thereon in any court of competent jurisdiction, the same as though no previous suit had been brought. See also, *Mobile & O. R. Co.* v. *Healy,* 109 Ill. App. 531; *Macardell* v. *Olcott,* 62 App. Div. 127, 70 N. Y. Supp. 930.

A number of cases, and also text-writers, have been cited by counsel for the defendant in error in support of the proposition that the judgment of a court of competent jurisdiction is conclusive upon the parties and their privies, in the absence of fraud or collusion, whenever that fact is again in issue between them, in the same or any other court, except on appeal, writ of error, or other proceeding provided for its revision. This is the familiar doctrine of *res judicata,* and it will be found upon examination that the court or text-writer, in each instance, had reference to either *final* judgments or to *second appeals* of the same case in the same court, and not to judgments remanding causes for *new trial,* as in the instant case. Among the cases and text-writers so referred to, see *Carper* v. *Norfolk & W. R. Co.,* 95 Va. 43, 27 S. E. 813; *Haffner* v. *Ches.*

&. O. R. Co., 96 Va. 533, 31 S. E. 899; *Virginian R. Co.* v. *Bell*, 118 Va. 492, 87 S. E. 570; *Ches. & O. R. Co.* v. *Rison*, 99 Va. 18, 37 S. E. 320; *Forsyth* v. *City of Hammond*, 166 U. S. 506, 17 Sup. Ct. 665, 41 L. Ed. 1095; *DeChambrun* v. *Campbell* (C. C.), 54 Fed. 231; *Holmes* v. *Oregon & C. R. Co.* (C. C.) 9 Fed. 229; 1 Freeman non Judgments (4th ed.), sec. 249.

Upon this branch of the case we are of opinion that the proceedings in the federal courts do not preclude the plaintiff from maintaining the present action. The judgment of the Circuit Court of Appeals, remanding the case for a new trial, is not, as to the present action, either *res judicata* or the "law of the case."

We come then to a consideration of the case upon its merits. The parties claim title from a common source, Philip Fleming. The defendant's title, as traced by the plaintiff, was acquired from Fleming several years before the plaintiff acquired his title, but the plaintiff claims that the deed made by Fleming to James A. Collier, under which the defendant derives title, was lost and never recorded, and that he had no notice, actual or constructive, of that deed, and that, having paid value for the land, he is protected as a subsequent purchaser for value and without notice. Defendant denies that the plaintiff paid value, and asserts that he had notice, both actual and constructive, of defendant's title.

The deed from Fleming to Collier, not having been recorded, was void as to Steinman, provided he was a purchaser for value and without notice. Code, sec. 2465. The defendant attempted to prove that the plaintiff was not a purchaser for value by showing that he paid only $125 for the coal and minerals underlying a tract of one thousand acres of land, while the land on survey turned out to be over two thousand acres, and that the plaintiff knew that the titles to lands in the county were in a very uncertain

condition, and hence the low price paid for it. The plaintiff, on the other hand, testified that the price agreed to be paid was $125 for the coal and underlying mineral in a tract which Fleming had obtained from the Warders. But Fleming had paid only $125 for the fee in the same boundary of land some fifteen or twenty years prior to that, and now, after a lapse of over forty years, no complaint had ever been made by Fleming that he had not been paid in full, and that the whole price agree had in fact been paid, and he produced evidence of it. The evidence is clear that Steinman and Price paid the full consideration agreed to be paid for the minerals. Under the law in this State it is not required that the consideration should be either fair or adequate, as is required in some States, but simply that the purchase should be for value; and even where adequate consideration is required it has been held that "no consideration of any value at all, upon which parties capable of contracting with each other, and in the absence of fraud, may agree, can be said, in a legal sense, to be inadequate." *White* v. *McGannon,* 29 Gratt. (70 Va.) 511; *Hale* v. *Wilkinson,* 21 Gratt. (62 Va.) 75; *Stearns* v. *Beckam,* 31 Gratt. (72 Va.) 379. We think that the record clearly shows that the plaintiff was a purchaser for value.

The defendant further attempted to show that even if the plaintiff was a purchaser for value, he was a purchaser with notice of the defendant's title. In order to establish this fact, the defendant attempted to show both actual and constructive notice on the part of the plaintiff. The burden was upon the plaintiff to show that he was a purchaser for value, and that the purchase price had been actually paid before notice of the defendant's title. The burden of showing notice rested upon the defendant. *Lamar* v. *Hale,* 79 Va. 147. The record fails to disclose actual notice on the part of the plaintiff.

An attempt was made to show that the title to the property was examined by counsel for the plaintiff, and that he must have discovered record evidence of the defendant's title, and if he did discover it that he communicated it to the plaintiff; but the testimony of the plaintiff's counsel shows that he had no recollection whatever on the subject, and even if notice had been proved as to the plaintiff's counsel, it would have been constructive notice, and not actual notice unless he communicated the information acquired by him to the plaintiff. Notice to the agent of a party is constructive, not actual. *Easley* v. *Barksdale,* 75 Va. 274, 283. But if he had notice, it is immaterial whether it was actual or constructive.

The chief reliance, however, of the defendant is upon the fact that the plaintiff had notice of the suit of *Lipps* v. *Collier,* which had been brought in the Circuit Court of Wise county, affecting the tract of 395 acres of land, which is the land in controversy in this suit. This was a suit by Lipps, a judgment creditor, against James A. Collier, Philip Fleming, Casander Boatwright (formerly Collier) and John Riner, as trustee. The object of the suit was to enforce against the 395-acre tract of land a judgment for money which Lipps had obtained against Collier. The bill set out the judgment; that Fleming had some time previously conveyed the land to Collier by a deed which had been lost; and that Collier had subsequently conveyed the land to Riner, as trustee, for the benefit of his (Collier's) wife. The bill prayed for an enforcement of the judgment against the land. To do this it was necessary to set aside, for the purpose of the judgment, the deed from Collier to Riner, trustee. The original papers in this suit have been lost, and a statement of the contents of the bill has been supplied by the deposition of the counsel for the plaintiff, who states that he carefully examined it and the other papers in the case, and made a very full memorandum there-

from. He states that the bill contained no prayer for general relief, nor to set up the lost deed. He seems to be positive of these facts, though he testified in part from memory and in part from a memorandum made some five or six years prior to his testimony. During the pendancy of that suit the case was referred to a special commissioner to ascertain the true and correct boundary of the land sold by Fleming to Collier. This the commissioner ascertained from the deposition of Fleming, and reported fully on it. On May 22, 1873, a decree was entered which contained, amongst other things, the following adjudication:

"Wherefore on consideration it is adjudged, ordered and decreed that the said James A. Collier or those who claim through him hold the said land in fee by title firm, stable, free from all claims of the said Philip Fleming or his wife, Minerva, in as full and ample a manner as if the lost deed were on record, and it is also ordered that a copy of this decree be recorded in the clerk's office of the county court of this county in the book wherein deeds are recorded, and the same shall be indexed in the name of grantor and grantee."

This decree was duly recorded in the Circuit Court of Wise county, in which the land then lay, June 5, 1873. Whether or not it was properly indexed is a subject of controversy. Subsequently, the plaintiff's judgment was paid off, and the suit was dismissed from the docket.

The Circuit Court of Appeals held that the suit of *Lipps* v. *Collier* was a suit for the recovery of land, and that the decree of May 22, 1873, was properly recordable under section 2510 of the Code; that it was duly indexed; and that consequently it gave the plaintiff constructive notice thereof. With great respect for the Circuit Court of Appeals, we feel compelled to dissent from its conclusion. Section 3454 of the Code, amongst other things, gives to any person who thinks himself aggrieved by any judgment,

decree, or order "in a controversy concerning the title to or boundaries of land" the right to appeal regardless of the amount in controversy. Section 3455 denies the right of appeal, in matters merely pecuniary, from a judgment, decree or order in a controversy in a matter less in value or amount than $300, exclusive of costs. In considering these sections this court has had occasion, in a number of cases, to determine when "a controversy concerns the title to or boundaries of land," and has held that a decree for sale of land in a partition suit, or for the appointment of a receiver, whereby change was made in possession or control of property, judgments in actions of unlawful entry and detainer, and decrees in suits relating to trust deeds upon real estate securing less than the minimum pecuniary jurisdiction of the court, all concern the title of land. *Stevens* v. *McCormick*, 90 Va. 736, 19 S. E. 742; *Shannon* v. *Hanks*, 88 Va. 338, 13 S. E. 437; *Deckert* v. *Chesapeake Western Co.*, 101 Va. 804, 45 S. E. 799; *Pannill* v. *Coles*, 81 Va. 380; *Sellers* v. *Reed*, 88 Va. 377, 13 S. E. 754. While, on the other hand, it has been held time and again that, in a suit to subject land to the payment of a judgment, the amount in controversy is to be determined by the amount of the judgment, and the title or boundary of land is not involved. The jurisdiction of the court on an appeal by the defendant is regulated by the amount decreed against him, or declared to be a lien on the land. *Fink* v. *Denny*, 75 Va. 663; *Hawkins* v. *Gresham*, 85 Va. 34, 6 S. E. 472; *Cook* v. *Bondurant*, 85 Va. 47, 6 S. E. 618; *Smith and wife* v. *Rosenheim*, 79 Va. 540; *Patteson* v. *McKinney*, 88 Va. 748, 14 S. E. 379; *Cash* v. *Humphreys*, 98 Va. 477, 36 S. E. 517; *Cook* v. *Daugherty*, 99 Va. 590, 39 S. E. 223. It has also been expressly held that a suit to subject land to the lien of a judgment is not a suit for the recovery of land. *Flanary* v. *Kane*, 102 Va. 547, 557, 46 S. E. 312, 681.

As the case of *Lipps* v. *Collier* was not a suit for the recovery of land, the court is of the opinion that section 2510 of the Code has no application to the decree rendered therein May 22, 1873. Nor do we think that any other section of the Code applies to said decree, and the recordation, therefore, of the decree, whether properly indexed or not, was not constructive notice to the plaintiff.

The court is of the opinion, however, that parties to judgments and decrees, and their privies, are, in the absence of statute requiring recordation, bound by said judgments and decrees without any other notice than that furnished by the proceeding itself. We need not stop to consider the different classes of privies. One who has succeeded to the right, title or interest of another in real estate is a privy in estate, and is bound by judgments and decrees against his grantor. In *Eakin* v. *McCraith*, 2 Wash. T. 112, 3 Pac. 838, it was held that a judgment in a former action between the defendant and plaintiff's grantor, in which the title to the land in controversy was in issue, will bind the plaintiff in a subsequent action of ejectment. In *Central National Bank* v. *Hazard* (C. C. N. D. New York), 30 Fed. 484, 486, it was held that every person is privy to a judgment whose succession to the rights of property thereby affected occurred subsequently to the commencement of the suit. Every grantee is estopped by the judgment against his grantor because he holds by a derivative title from such grantor. Freem. Judgm., sec. 162; *Adams* v. *Barnes*, 17 Mass. 367; *Campbell* v. *Hall*, 16 N. Y. 575.

In *Cushing* v. *Edwards*, 68 Iowa 145, 25 N. W. 940, it was held that a party who has constructive notice of the sheriff's deed of property which was afterwards conveyed to him, cannot defeat the title of the party under the sheriff's deed on the ground that he has no notice of the judgment on which the property was sold.

In *Whitford* v. *Crooks,* 54 Mich. 261, 20 N. W. 45, the opinion was delivered by Cooley, Chief Justice. In that case one Kean brought an action of ejectment in 1869 against the executors of a decedent to recover a section of real estate. The action involved the fee of the land. Kean recovered a judgment for the north half of the section, and the defendants for the south half. Kean, after his ejectment suit was determined, gave a deed to the part which he had failed to recover, that is, the south half, to one Benedict, and Benedict conveyed to Crooks. Crooks entered into possession of the land and an action of ejectment was brought against him by the alienee of the executor and heirs. The alienee claimed the right to recover on the ground that the deed from Kean to Benedict, and from Benedict to Crooks put Crooks in no better position than Kean himself stood, and that the recovery against Kean estopped not only him but also Crooks from recovering the land, and the court so held. The judgment was given for the plaintiff on the ground that the prior judgment bound not only Kean, but Crooks as alienee.

New York had a statute very similar to ours requiring judgments for money to be docketed. The question there arose as to whether or not a judgment in ejectment which was not docketed was binding on a subsequent alienee of one of the parties. In *Sheridan* v. *Andrews,* 49 N. Y. 478, 481, Rapallo, Judge, said: "The docketing under the act of 1840 in the county clerk's office was not essential to the conclusiveness of the judgment. Such docketing is only required for the purpose of making a money judgment a lien on the real estate of the debtor, and as a preliminary to the issuing of an execution. This judgment is not sought to be enforced as a lien, but is set up as an estoppel.

"The material point of inquiry is whether the defendants are persons claiming from or through Jackson, by title ac-

cruing after the commencement of the action against him. If they are, the judgment is conclusive upon them as to the plaintiff's title.

"The point, that the absence of a notice of *lis pendens* deprives the judgment of its effect as against persons claiming from or through the defendants, cannot be sustained. The only office of a notice of *lis pendens* is to give notice of the pendency of the action so as to affect persons who may deal with the defendants in respect to the property involved, before final judgment, and thus bind them by the judgment in the same manner as if they had been made parties to the action. Formerly the commencement of a suit in equity was of itself constructive notice to subsequent purchasers, and they were bound by the decree. This rule was adopted in analogy to the rule in real actions at common law, that if the defendant aliened, pending the writ, the judgment would overreach such alienation (*Murray* v. *Ballou*, 1 Johns. Ch. 577)."

Speaking further of the statute for docketing *lis pendens*, he said: "This section does not, nor do any of the previous statutes, relate to the effect of a judgment or to the rights of parties claiming under a title acquired after judgment, but only to those who take during the pendency of the action.

"Section 132 of the Code provides that *the pendency of the action* shall be constructive notice to purchasers from the time of the filing of the notice only, and that such purchasers shall be bound by all proceedings taken after the filing of such notice to the same extent as if they were made parties to the action. This is the whole scope and object of the notice. It has no relation to titles acquired after judgment. It never was pretended that any notice was necessary to render the judgment effectual as against parties claiming under the defendant by transfer subsequent to the judgment. (*Campbell* v. *Hall*, 16 N. Y. 579,

580). The judgment disposes of the rights of the parties and is a matter of public record. Its effect cannot be impaired by any subsequent transfer by the defendant. He is concluded by it, and his grantee cannot be in any better situation than the party from whom he obtained his right. (Bacon's Ab., Evidence, f.) The recording acts have no relation to the subject."

This must of necessity be true. There would be no end of litigation if the effect of a judgment or decree could be avoided by a simple transfer of the property by the unsuccessful litigant as soon as an adverse judgment or decree was rendered. Decrees are rendered every day construing contracts, deeds, wills and other documents, and such decrees bind not only the parties to the litigation, but all persons claiming under them, with or without notice of the decree. The privies can stand on no higher footing than their principals. The legislature, of course, might change this, if it deemed it wise and practicable to do so, but it has not done so.

It would seem, therefore, that the plaintiff was bound by the proceedings in the case of *Lipps* v. *Collier*, in consequence of the fact that he took his deed from Fleming after the termination of that suit, and that the recording acts do not affect the question, unless the plaintiff can bring himself within some exception to the rule on that subject.

The plaintiff seeks to avoid the consequence of this rule by alleging that "it can only be the necessary parties and their privies who are bound, and then only upon proper pleadings." We cannot give our assent to this proposition. No authority is cited for it, nor should we be inclined to follow it, if it had been cited. Judgments bind the actual parties to the suit, whether they were necessary parties or simply proper parties. It is said that those are held to be parties who have a right to control the proceedings, to make defense, to produce and cross-examine witnesses, and

to appeal from the decision if any appeal lies. It is further said that these also may be termed parties "for or against whom the record of the former proceedings might be adduced in another trial." 2 Black on Judgments, sec. 534, and the cases cited.

Fleming was the former owner of the land, and it was alleged in the bill that he had conveyed the land to Collier, but that the deed had been lost or mislaid. Fleming was directly interested to show that the land had not been paid for, or that he had not made any deed. The decree made in the case which set up the lost deed and subjected the land as the land of Collier would not have been binding upon Fleming if he had not been a party to the suit, and in our judgment he was at least a proper party, if not a necessary party, so as to give him an opportunity of defending his title, or if he admitted the conveyance of the title, to preclude him in the future and those claiming under him, from gainsaying the plaintiff's title to the land. In the case of *Findlay* v. *Hinde*, 1 Pet. 242, 7 L. Ed. 128, the court said, it appears from the answers and title deeds filed in the cause that all the defendants are interested in defending the title as they stand in the relation to each other as vendors, grantees, and vendees. In the course of the opinion, referring to a grantor somewhat similarly situated, the court said, "he might insist that the purchase money had not been paid or make various other defenses." It is not true that if he were made a party, no decree could be made against him. It might not be necessary to require him to do any act, but it would be indispensable to decide against him the validity of his obligation to convey and to overrule such defense as he might make."

As. to the propriety of the pleadings in the case, it is clear that equity had jurisdiction of the bill to enforce the judgment lien under section 3571 of the Code, and having acquired jurisdiction for this purpose, it will go on and do

complete justice between the parties, even to the extent of enforcing purely legal demands of which it would not otherwise have jurisdiction. *Anderson* v. *Harvey*, 10 Gratt. (51 Va.) 386; *McArthur* v. *Chase*, 13 Gratt. (54 Va.) 683; *Walters* v. *Farmers' Bank*, 76 Va. 12; *Miller* v. *Wills*, 95 Va. 337, 28 S. E. 337; *Woolfolk* v. *Graves*, 113 Va. 182, 69 S. E. 1039, 73 S. E. 721; *Bettman* v. *Harness*, 42 W. Va. 433, 26 S. E. 271, 36 L. R. A. 566; *Miller* v. *L. & N. R. Co.*, 83 Ala. 274, 4 So. 842, 3 Am. St. Rep. 722; *Deveney* v. *Gallagher*, 20 N. J. Eq. 33; 1 Pom. Eq., sec. 181; *Moorman* v. *Board of Sup. Campbell Co.*, 121 Va. 112, 92 S. E. 833.

It was insisted, however (1) that equity has no inherent jurisdiction to set up lost documents; (2) that the suit of *Lipps* v. *Collier* did not conform to the statutory requirements of sections 2361-2-3-4; and (3) that there was no prayer for general relief. It was conceded that the suit of *Lipps* v. *Collier* did not conform to the statutes for setting up lost instruments, but that is deemed unnecessary. Without conceding the correctness of the first proposition (see *Sharon* v. *Tucker*, 144 U. S. 533, 12 Sup. Ct. 720, 36 L. Ed. 532, and cases cited; 13 Ency. Pl. & Pr., 351ff; 25 Cyc. 1609ff) it is immaterial whether equity had inherent jurisdiction to set up a lost instrument or not. It clearly had jurisdiction to enforce the judgment lien, and having acquired jurisdiction on this ground, upon well settled principles, it could retain the case so as to do complete justice between the parties. See cases hereinbefore cited.

As to the absence of a prayer for general relief, it is said that this is a prayer that should never be omitted in any bill in equity, for the reason that if the special relief prayed for cannot be given, the court may under the prayer for general relief grant proper relief consistent with the case made by the bill. *Woolfolk* v. *Graves*, 113 Va. 182, 69 S. E. 1039, 73 S. E. 721. This principle is so well known in the profession that it is difficult to believe that a lawyer

of any experience would prepare a bill omitting the prayer for general relief, and as it is so universally inserted, it is likely that in taking a memorandum from the bill no particular attention would be paid to its insertion. Conceding, however, that the bill contained no prayer for general relief, still the prayer to subject the land to the payment of the judgment carried with it necessarily an implied prayer to do whatever else was necessary and proper for the enforcement of the lien of the judgment upon the land. The removal of the cloud occasioned by the loss of the judgment debtor's deed was an essential step in subjecting the land to the payment of the judgment.

There is no subject about which the courts are more careful than that of judicial sales. It is the effort of the courts at all times to see that the land is brought to the hammer under the most advantageous circumstances so as to realize the best price that can be obtained therefor, and to protect the interests of all parties, and it has been held that before a sale of land is decreed any cloud on the title or any impediment to a fair sale ought to be removed as far as it is practicable to do so. *Thomas* v. *Farmers' Nat. Bank,* 86 Va. 291, 9 S. E. 1122. In a great number of cases it has been held premature and erroneous to order a judicial sale to satisfy encumbrances on land before ascertaining the liens binding the land, their amounts and respective priorities; the reason assigned being because otherwise there would be a tendency to sacrifice the property sold by discouraging creditors from bidding as they probably would if their right to satisfaction of their debts had been previously ascertained. *Coles* v. *McRae,* 6 Rand. (27 Va.) 644; *Horton* v. *Bond,* 28 Gratt. (69 Va.) 815; *Shultz* v. *Hansbrough,* 33 Gratt. (74 Va.) 567; *Fidelity Loan Co.* v. *Dennis,* 93 Va. 504, 25 S. E. 546; *Bristol Iron & Steel Co.* v. *Caldwell,* 95 Va. 47, 27 S. E. 838; *Sims* v. *Tyrer,* 96 Va. 14, 30 S. E. 443. It was the duty of the court, as far as

possible, to remove all impediments to a fair sale and one to the best advantage. We think that the relief might properly have been granted by the court under this special prayer.

The only remaining ground assigned by the plaintiff to show that he was not bound by the decree in the case of *Lipps* v. *Collier* is the policy of the law of this State as manifested by section 3566 of the Code requiring the docketing of *lis pendens,* thereby indicating that the record of the suit is not notice to the world. Prior to the enactment of this statute, any suit at law or in equity which concerned the title to real estate was notice to all the world of the title of the respective parties to the suit, and whoever bought of either party pending the suit was charged with notice of title set up by the other, and was bound by any judgment or decree affecting that title which was rendered in the suit. Merwin on Equity, sec. 769; *Union Trust Company* v. *Southern Navigation Company,* 130 U. S. 565, 9 Sup. Ct. 606, 32 L. Ed. 1043; *Murray* v. *Ballou,* 1 Johns. Ch. (N. Y.) 566.

Of course, if the mere pendency of a suit bound the parties, the final judgment entered in the case necessarily bound them. The rule is the same now as to personal property (*Osborn* v. *Glascock,* 39 W. Va. 749, 20 S. E. 702), but it has been changed as to real estate so as to require the docketing of a *lis pendens* in order to affect a purchaser for value and without actual notice. The change wrought by the statute applied only to a purchaser of real estate in a pending suit. It was not extended to a purchaser of personal property, nor to the effect of a judgment or decree after the termination of a suit. As to purchasers of personal property after termination of the suit, the common law still prevails. *Sheridan* v. *Andrews,* 49 N. Y. 478.

The plaintiff is bound by the proceedings in the suit of *Lipps* v. *Collier,* and took his deed in subordination to the

rights of the defendant. Holding under Fleming, he is estopped by the decrees in *Lipps* v. *Collier* from asserting a title against the defendant which had been adjudged against his grantor and in favor of defendant's remote grantor. For these reasons, the judgment of the circuit court must be affirmed.

*Affirmed.*